Robert Eugene ROBERTS, Appellant,

v.

STATE of Missouri, Respondent.

No. 56440.

Supreme Court of Missouri,
Division No. 1.

Feb. 22, 1972.

J. Arnot Hill, Kansas City, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Commissioner.

Appeal from denial, after evidentiary hearing, of motions under Criminal Rule 27.26, V.A.M.R., to vacate and set aside judgment of conviction of murder, second degree.

On August 27, 1964, Robert Eugene Roberts was convicted before Honorable Henry A. Riederer on his plea of guilty to burglary, second degree, and was placed on probation. On November 6, 1964, he was charged with murder, first degree; and, on December 21, 1964, he was sentenced by Judge Riederer to 20 years' imprisonment on his plea of guilty to murder, second degree. On that same date his probation on the burglary conviction was revoked; he was sentenced to 5 years' imprisonment; and the court directed the two sentences to run concurrently.

Upon his imprisonment, Robert Eugene Roberts was advised by the Department of Corrections that under Section 222.020, V.A.M.S., his sentences were required to be served consecutively. He filed a motion under Criminal Rule 27.26 to vacate the sentences so imposed and Jackson County No. 707,676 was assigned to the cause. On October 18, 1968, after an evidentiary hearing, Judge Riederer sustained the motion in part to vacate the murder sentence but not the conviction, and resentenced movant to 15 years' imprisonment for murder, second degree. The court then ordered the sentences for murder, second degree, and burglary, second degree, to run consecutively in order that the original intention to impose a total of 20 years' imprisonment be accomplished. The court overruled the motion in part to deny allegations of ineffective assistance of counsel and deprivation of rights under the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 19 of Article I of the Missouri Constitution, V.A.M.S. No appeal was taken in Cause No. 707,676.

On February 6, 1970, Robert Eugene Roberts filed the present motion to attack the judgment and sentence in the murder conviction, and Jackson County No. 733,-709 was assigned to this cause. As grounds for relief movant alleged: that his guilty plea was coerced by incompetent counsel; that he was put under fear by his counsel; that imposition of the 15-year sentence was only an admission of prior error and was a denial of due process. Evidentiary hearings were accorded before the Honorable Harry A. Hall on May 14, May 20, and November 11, 1970. On May 15, 1970, movant amended his motion to add, as a ground for relief, that the police coerced him into giving a written, signed statement admitting guilt, and that his plea of guilty was a direct result of the statement.

On December 23, 1970, Judge Hall found, among other things: that movant was represented in connection with his guilty pleas by Richard Kirwan, now deceased, with long experience in the trial of criminal cases; that in the prior proceeding, Cause No. 707,676, Judge Riederer found that movant had effective assistance of counsel in entering his guilty pleas; that there were no threats, promises or physical coercion to cause movant to give his statement; that he was not coerced into signing such statement; there is no evidence to show how counsel might have been more effective; that his lawyer in Cause No. 707,676, Phillip L. Myles, obtained significant relief for movant with respect to his total imprisonment. Judge Hall concluded: that both of movant's prior attorneys rendered effective assistance to him in the plea proceedings and in Cause No. 707,676; that movant made a

knowing and voluntary statement admitting his involvement in the murder charge; that there is no evidence movant was deprived of any constitutional rights; that movant made a knowing and voluntary plea to murder, second degree. Accordingly, Judge Hall overruled the motion in Cause No. 733,709.

Appellant concedes he offered no evidence that Mr. Kirwan, with respect to the guilty pleas, or Mr. Myles, with respect to the prior motion, were incompetent, except to say "every time he [Mr. Kirwan] came up there, you know, he was scaring me, telling me I might get the death penalty, it would be best for me to cop out for 20 years." Appellant asserted that Mr. Kirwan was an alcoholic to which both the court and present counsel, Mr. J. Arnot Hill, took exception based on each of their long acquaintance and association with Mr. Kirwan. For example, the following appears from the record:

"MR. HILL: There comes a point—I may be your lawyer, but I'm not your mouthpiece. Mr. Kirwan was a lawyer who deserves great respect. He is now dead. He was not an alcoholic. Now, tell us why you made that statement. THE WITNESS: He came up there to see me two times when I first got this case and he was high, each time I smelled alcohol on his breath. He coerced me into taking this time.

"THE COURT: Well, I think in view of the charge, perhaps you ought to have some—the Court, of course, has known Mr. Kirwan for many years. He tried many, many cases before this Court, and I can agree with Mr. Hill, I have never the seen the man when he was under the influence, had even had the slightest odor of alcohol about him, and to my knowledge he was not a drinking man at all, in fact, a teetotaler. He was a man of very vigorous, rugged good health, active in the practice up until just a short time before his death. Is that the only complaint that you have of Mr. Kirwan? THE WITNESS: Yes, the only complaint.

"THE COURT: All right. Now, you mentioned that you took the plea because you were under duress and the transcript of the records of those proceedings will be a part of this proceeding. In going through the transcript I find that Judge Riederer very carefully asked you, apparently you had given him a statement that at one time you had a reason that you were afraid to tell the truth. He asked you, 'Do you have any reason now?' And you were under oath, and you said no, sir. Then the Judge asked you, 'I don't want you to plead guilty to this charge of murder unless you did actually murder this fellow deliberately, wrongfully. Do you understand that?' And you answered yes, sir. The Court said, 'Now, how do you plead to the charge of murder in the second degree?' and you said, 'Guilty'. Then he asked you if you knew what the sentence was and it was explained to you. Now you say that you were coerced or you made the plea—do you know what duress means? THE WITNESS: No, sir.

"THE COURT: Well, you alleged in your motion that you made the plea under duress. You knew what you were doing when you made the plea, didn't you? THE WITNESS: Yes, sir, but like I said, every time he came up there, you know, he was scaring me, telling me I might get the death penalty, it would be best for me to cop out for 20 years. I understood clearly what the Judge was saying, but I was going by what my lawyer was telling me.

"THE COURT: The Court said here, 'You stabbed Charles Walter Sipp?' and you answered that yes, sir. Apparently he asked you for a light, or you asked him for a light, and the court asked you, 'Where did this occur?' and you said at 22nd and Charlotte, and he asked you who was with you. He also asked, 'Do you understand that under the charge of murder second degree the Court could sentence you to life imprisonment? Do you clearly understand that?' Do you remember what you told the Judge? THE WITNESS: Do I remember? THE COURT: Yes. THE

WITNESS: I remember clearly. THE COURT: You remember clearly? THE WITNESS: Yes. THE COURT: What did you tell him? THE WITNESS: I told him yes, I understood it, but like I say, I am doing what my lawyer told me to do.

"THE COURT: Then when he asked you if you stabbed Charles Walter Sipp, what did you tell the Judge? THE WITNESS: I told him yes."

Mr. Myles recalled that Mr. Kirwan testified on the issue of effectiveness of counsel in the prior proceedings. He checked the case and could find no place where Mr. Kirwan had not represented movant properly. He, too, was aware of Mr. Kirwan's reputation for sobriety, and he felt him to be competent and well qualified in criminal cases. He found nothing in the record, nor was anything communicated to him to show where defendant had been placed under duress with respect to his plea. He did not find any prejudice to movant's constitutional rights.

With respect to the alleged coercion, movant was arrested October 19, 1964, for a homicide committed October 17, 1964. He was arrested at his home about 4:30 p. m. and taken to the police station. He was questioned at the station by two police officers. According to him, he admitted that he struck, hit, or kicked Charles Walter Sipp who died October 17, 1964, "after they beat me and stuff, you know. * * * I was hit with blackjacks, kicked, you know, hit with fists." The statement was dated October 21, 1964. He pleaded guilty December 21, 1964, to murder, second degree, because "they was scaring me upstairs, and my lawyer, was coming up there telling me it would be best for me to cop out, because he could get it dropped to second degree murder. It was first degree from the start, he said. He said he would get it dropped to second degree for me, so I could cop out to 20 years.

"Q. [Mr. Hill]: The fact that the prosecutor and the police were in posses-

sion of a written signed statement, signed by you, did that have anything to do with your entering a plea of guilty? A. No, sir."

Movant did not know the names of any officers who were supposed to have struck him while in custody.

Another facet of movant's alleged coercion came at the second hearing when he testified that the officer (now identified as Officer Penson) made him get on his knees and pray before signing the statement. "He said that [prayer] would be my best bet, because I would probably go to the gas chamber. * * * I was beside him on my knees, he was in the chair. * * * I prayed [aloud] that they wouldn't jump on me no more."

On the final hearing movant added still another aspect to his alleged coercion by denying he made or signed a statement and by now asserting that Mr. Kirwan told him it would be better for him to plead guilty, "because they had some written statements on me," and did not tell about any other evidence the state may have had.

Officer Robert N. Penson investigated the murder of Walter Sipp and had occasion to interview Robert Eugene Roberts in the presence of Detective James Zimmerman. He investigated the crime scene and interrogated several other persons who were purported to be witnesses. Movant's statement was taken with Detective Zimmerman asking the questions. The process took thirty to forty-five minutes. They talked to movant before anything was written. " * * * he would give an oral statement and then give a written statement * * *." A clerk typist was also present. As to movant's rights, "In 1964 we had a form that met with the approval of the courts, and we advised them that they did not have to make a statement and that anything they said could be used against them in the event of a trial." Movant was given such advice before he made any statement. "I did not strike the man or assault him, and I am positive that

Detective Zimmerman did not strike or assault him." He had no knowledge of any complaint by movant that he had been assaulted by any officer. Movant was willing to talk about his statement. "He appeared to do so voluntarily * * *."

Officer Penson stated no threats or promises were made to induce movant to sign the statement. "He was competent enough to get down on his knees and prayed with me * * *." In addition to praying before he made his statement, movant also was remorseful and spoke freely and voluntarily. The prayer was movant's own idea because "he felt the necessity to pray." Officer Penson could not recall the substance of the prayer, but he was not praying that he not be hit, injured, or hurt. After the statement was completed, the officer joined in prayer with movant.

Detective Zimmerman was present when movant signed his statement. No threats, promises or physical intimidations were made to induce the confession or its signing. He was advised of his rights and the advice was incorporated into the statement. Detective Zimmerman did not recall any prayer sequence between movant and Officer Penson but he was aware that such often occurred. The purpose is "if the man is remorseful, maybe he wants to get it off his chest." He had also engaged in prayer with other suspects "to help the man's conscience."

■ Appellant recognizes, as he must, that he has no case of ineffective assistance of counsel; and his sole contention is that Judge Hall's findings, conclusions, and judgment are "clearly erroneous in that the trial court failed to find that defendant's confession was involuntary and that he was misled by his counsel."

■ Appellant's first argument is based on evidence that movant was in custody for more than 20 hours, and on Section 544.170, V.A.M.S., which entitles an arrested suspect to release after 20 hours. However, in making this argument, appellant recognizes that detention beyond the statutory limit, standing alone, is not sufficient to make an otherwise voluntary statement involuntary. State v. Smith, Mo., 310 S. W.2d 845, 851[9].

In an attempt to show something else to go with the circumstance of detention, appellant reminds of the evidence of prayer. The testimony on this subject is in conflict. Movant stated that he prayed that the officers would no longer beat him. The officers stated there was no physical coercion, and that defendant's prayers were his own idea and voluntary on his part. Such conflict was resolved against movant by the court.

A second attempt to show something in addition to the detention is by the evidence with respect to physical coercion. The testimony on this subject is also in conflict: Movant stated he was beaten by blackjacks and fists; the officers denied movant was physically intimidated in any way. Such additional conflict was also resolved against movant.

Nor can it be said that the existence of movant's statement "had an abiding impact which tainted his plea of guilty" as argued by appellant, because he categorically denied that the presence of his confession in the hands of police and prosecution had anything to do with his entering a plea of guilty.

■ The final attempt to show something else is made by an emphasis on movant's testimony that Mr. Kirwan told him to plead guilty because they had some written statements "on him." This testimony must be viewed in context with the failure to support any allegation of ineffective assistance of counsel by Mr. Kirwan, and the evidence that Mr. Kirwan felt the best thing for defendant to do was to plead guilty to a reduced charge and avoid extreme penalties that could result from a trial on murder, first degree. Further evidence on this question shows that movant's

 

lawyer on his first motion, Mr. Myles, and his lawyer in this instance, Mr. Hill, reviewed Mr. Kirwan's performance as trial counsel and found it to be without error and consistent with the high standard for which Mr. Kirwan was widely known. Again, conflict, if any, was resolved against movant; and that counsel may have urged the defendant to enter a plea of guilty and avoid the possibility of a death penalty is not necessarily evidence of incompetence, misleading, or coercion. In a first degree murder case, such advice could well have been good advice. Crosswhite v. State, Mo., 426 S.W.2d 67, 71.

Accordingly, it may not be said on this record that the findings, conclusions, and judgment in denial of relief were "clearly erroneous." Criminal Rule 27.26; Crosswhite v. State, supra. See also Roberts v. State, Mo., 458 S.W.2d 248; McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.