WELBORN, Commissioner.
Action to set aside convictions and sentences to four concurrent life terms, entered on pleas of guilty to three charges of *2 robbery, first degree, and one charge of murder, first degree. Rules 27.25, 27.26, V.A.M.R. Trial court denied relief after a hearing and movant appealed.
In September, 1970, Gary Fulton Hall was arrested in St. Louis and charged in two informations with robbery in the first degree, and in separate indictments with murder in the first degree and robbery, first degree. Samuel J. Kevrick was appointed to represent movant in all of the four cases. On January 11, 1971, Hall appeared in circuit court with Kevrick and entered pleas of guilty to the four charges and was sentenced to life imprisonment on each charge, the sentences to run concurrently. On October 20, 1971, movant filed a motion in the St. Louis Circuit Court to set aside the four convictions and sentences. Counsel was appointed to represent him. After a hearing at which Hall and Kevrick testified, the trial court denied relief and this appeal followed.
In this court, the appellant contends that the trial court should have granted relief because his pleas of guilty were the result of ineffective assistance of counsel prior to and at the time of his guilty pleas. He also contends that the pleas on the charges made by indictment should be set aside because he was denied assistance of counsel at the grand jury proceedings.
On the first issue, appellant’s brief summarizes the complaint against the trial attorney, as follows:
“Hall’s attorney, Kevrick, informed defendant that the death penalty was possible if he went to. trial, and 'told him that he could not plead guilty to just the two robbery charges contained in the Information-. Kevrick told him that he would have to plead guilty to all four charges or go to trial on the Information that day, and that a jury could bring back the death penalty. These statements by Kevrick had the effect of influencing defendant into changing his original plea of not guilty to guilty.
“Kevrick did not file any pretrial motions in the case and did not question any of the State’s witnesses. These witnesses were endorsed on both the Information and the Indictments. * * *”
The statement testified to by Hall was that Kevrick told him that he should plead guilty because “he didn’t know anything about the case and I had no witnesses in my defense.”
Appellant’s contention is premised primarily upon the testimony of Hall, ignoring Kevrick’s testimony which the trial court obviously relied upon in concluding that the pleas of guilty were voluntarily entered and were not coerced and that defendant had the benefit of effective assistance of counsel.
Kevrick’s testimony supports these findings. He testified that another member of his firm was appointed to represent Hall but that he took over the job because the health of the other attorney would not have permitted him to try the case. Shortly after taking over the cases in October, 1970, he with an associate interviewed Hall at the city jail at length. He attempted to follow up some leads as to persons who might be of assistance in preparing a defense, but was unable to locate them. He discussed the cases with the assistant circuit attorney and was familiar with the evidence which the state would present at the trial, although he did not attempt to interrogate the witnesses endorsed for the state. He talked with Hall at least twice about the state’s version of the cases.
He learned a few days prior to Monday, January 11, 1971, of-a trial setting on that date for the two robbery informations. On Thursday or Friday; Jie- talked,, with Hall. Kevrick made the' following- mote on the events of January 11:
“Saw defendant in jail at back of courtroom to get his answer to proposition of State for life sentences to all charges to run concurrently. I pointed out specifically I had learned that statistically a life sentence was fifteen years, give or take a couple of years. I had spoken to Judge *3 Godfrey in his chambers earlier, who believed that statistically a life sentence was about twelve years. I did not — Recalling this, I did not say anything about twelve years. First the defendant said he would not plead, especially to the murder charge. He did say he was good- — and 1 have good in quotations — for the robberies that took place on Taylor and Compton. I pointed out that on the robberies the range of punishment was five to life, or even death, if the jury was so qualified, but in all probability the maximum would be life, the maximum would be life; that because of his prior conviction the Judge would give him more than the minimum of five years and that on each conviction the sentence would be consecutive if he went to trial and was found guilty. I prevailed on Mr. White, the Assistant Circuit Attorney, to talk to the first assistant to see if he would recommend something less. I spoke to the first assistant who said he couldn’t reduce the murder felony, murder one, and the life sentence was the best he could do; that evidence would show there was a one-shot identification by a patron; that when defendant was arrested he had a gun on him that matched up with bullets bal-listically. When I went back to the defendant to tell him what the State had on him he agreed to plead. I explained his right to a jury trial and appeal and told him he should not plead guilty unless he did what the State claimed he did. Accordingly, pleas were entered and he was sentenced to life on each charge (4) to run concurrently.”
Kevrick’s testimony, considered with the transcript of the sentencing, supports the trial court’s findings. Such evidence supports the conclusion that Kevrick did not coerce the guilty plea and that he advised movant of the alternatives and left the final decision to Hall. Advice as to the possibility of a death sentence was not coercion. Roberts v. State, 476 S.W.2d 490, 494-495[3], (Mo.1972). The testimony of Hall that he pleaded guilty because Kevrick told him that he did not know anything about the cases is contrary to Kev-rick’s testimony that he did familiarize himself with the cases. Kevrick did endeavor without result to obtain witnesses favorable to the defendant. His lack of success is not evidence of inadequate assistance. Colthorp v. State, 466 S.W.2d 689 (Mo.1971). Nothing in the record here would indicate that grounds existed for pretrial motions of any character. The trial court’s finding on this issue is not clearly erroneous. Rule 27.26(j).
Appellant has cited no authority in which it had been held that failure to appoint counsel for an indigent defendant at the grand jury stage of the proceedings invalidates a subsequent plea of guilty. See Steele, “Right to Counsel at the Grand Jury Stage of Criminal Proceedings,” 36 Mo.L.Rev. 193 (1971). The trial court did not err in denying relief on this ground.
Judgment affirmed.
HIGGINS, C, not sitting.
PER CURIAM:
The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.
All of the Judges concur.