**STATE of Missouri, Plaintiff–Respondent,**

v.

**Michael A. SMITH, Defendant–Appellant.**

**No. 14994.**

Missouri Court of Appeals, Southern District, Division Two.

March 4, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 25, 1988.

William L. Webster, Atty. Gen., Scott L. Templeton, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

**680**

Gregg T. Hyder, Columbia, for defendant-appellant.

PREWITT, Presiding Judge.

Following trial by jury defendant was convicted of second degree murder and three counts of assault in the first degree. He was sentenced to life imprisonment on the murder conviction and fifteen years on the three assault charges with the assault sentences to run consecutively. Defendant appeals.

Defendant has three points relied on. The first point that we discuss states that the trial court erred in not submitting to the jury, as he requested, an instruction on involuntary manslaughter as "there was evidence that the killing was done recklessly and was consequently involuntary manslaughter."

On April 15, 1985, between 6:15 and 6:55 p.m., shots from a rifle were fired toward at least four vehicles traveling on State Highway 52, in Miller County, approximately half-way between the towns of Tuscumbia and Saint Elizabeth. Edward Rehagen, an occupant of one of the vehicles was killed. The driver of another vehicle was able to give a general description of the man firing the shots.

Defendant had been living with his second cousin and her husband approximately three-quarters of a mile from where the shootings occurred. The day after the shooting law enforcement officers found him hiding underneath their house. After the officers talked to him for approximately forty-five minutes, he came out from underneath the house. He had with him a .22 caliber pistol. Following interrogation by officers after his arrest, defendant admitted firing the shots and a rifle he possessed was identified by ballistics experts as having fired a bullet found in one of the vehicles.

April 15, 1985, was defendant's 19th birthday. He testified that he celebrated it by consuming alcoholic beverages and valium and then went into the woods with a rifle, telling his second cousin and her husband that he was going hunting. He testified that actually he was considering killing himself. He said he was depressed at the way things had worked out for him. In high school and after he quit high school he had abused the use of alcohol and drugs, lost his job and the girl he wanted to marry. Because of this he felt he had nothing else to live for and was "angry at the world at large."

Defendant was an illegitimate child who did not recall his father or mother. His mother had died just before he was three. As described by his second cousin, during his life defendant had "been switched back and forth until he didn't know whether his home would be with one person or with someone else." The gist of the psychiatric testimony was that although defendant had significant mental problems, he was not legally insane.

Defendant contends in his brief that evidence that he acted recklessly came from testimony of a psychiatrist that he did not know whether defendant "was shooting at people; he was shooting at vehicles", and defendant's testimony that he "hated the car" and that he "hated the world". Defendant asserts that this constitutes evidence that he recklessly killed Mr. Rehagen and that he was firing at automobiles and did not intend to kill someone.

■ As may be relevant here, involuntary manslaughter is committed if a person recklessly causes the death of another. § 565.024.1(1), RSMo Supp.1984. Such involuntary manslaughter is a lesser included offense of first and second degree murder, § 565.025, RSMo Supp.1984, but a court is not obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense. § 556.046.2, RSMo 1978.

■ The evidence shows that defendant did not just shoot at the Rehagen vehicle but shot at the part of the vehicle where the people in it could be hit. Defendant's conduct in shooting several times into the car showed an intent to do conduct which could kill an occupant of the vehicle. It went beyond recklessness.

Recently this district in *State v. Tate*, 733 S.W.2d 45, 47–49 (Mo.App.1987), discussed whether there was evidence of recklessness on the part of a defendant in causing a death such that an instruction on involuntary manslaughter should have been given. There, as here, the defendant was convicted of second degree murder. As in Tate, defendant's conduct here "transcends mere recklessness. There was nothing involuntary about it." The trial court was not obligated to instruct on involuntary manslaughter. This point is denied.

In another point defendant asserts that the trial court erred in refusing to sustain his motion to suppress and allowing into evidence statements regarding the shootings that he made to law enforcement officers following his arrest. Under this point defendant has subdivided his contentions regarding the admissibility of the statements.

In his first subpoint defendant claims that he was denied counsel after he requested counsel during custodial interrogation. He asserts in his second subpoint that the "interrogation continued after he had plainly and firmly said that it would not continue until he consulted with counsel". In both subpoints appellant relies upon the testimony of Missouri Highway Patrol Lieutenant Roy Bergman. When Bergman was asked if during interrogation on April 19, 1985, defendant indicated he would like to have an attorney, Bergman replied:

A. Yes. After he had made the statements several times that if he did it, that he was sorry and I said specifically, "Did you shoot those cars?" and et cetera. And that he—if he was going to tell us, he would tell the whole thing. Make a clean break of it. And then very abruptly he said, "I don't want to say any more before I see my attorney."

Q. What was your response to that?

A. I said, "Very well. You understand from this point on, if you want to initiate an attorney, it will have to be on your part. If you want to talk to me or to any other police officer from now on, you will have to initiate the conversation. And I will not ask you any more questions about this." And he said, "Okay."

Q. Did he initiate any further conversations with you then?

A. Yes, we quit. I had left him there any [sic] they were getting ready to take him out of the office there and put him in the jail. And he said that he wanted to talk to me again. And then I took another witness or two with me. I said, "What do you want to talk to me about?" He said, "I want to say some more about it." I went through again his rights, that you are doing this voluntarily, that you are advised of your rights to counsel and et cetera. And this—I said this in front of witnesses, too. And he said, "Yes, I understand." And then again he said that he was sorry and that if he did it that he would not want to live. He said he don't want to say anymore again so we stopped again.

Q. Did you interview him further at that time?

A. No, sir, I did not.

On April 17, 1985, a deputy sheriff testified that defendant said that he would like "a soda and a cigarette and that he would like to talk to someone." There was evidence that he was given the "Miranda" warning and defendant indicated that he understood it. The deputy testified that defendant then said that he had become intoxicated and "that he kind of lost control of himself and he started shooting at passing cars on the highway." During cross-examination defendant was asked if he recalled telling the officers at that time "that you wanted to talk to them". He replied, "Yes".

■ Although asking to deal with law enforcement personnel only through counsel should stop further interrogation until counsel has been made available, before that occurs the accused can initiate further communication, exchanges, or conversations which will be admissible. *Edwards v. Arizona*, 451 U.S. 477, 484–485, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). See also *Smith v. Illinois*, 469 U.S. 91, 94–95, 105 S.Ct. 490, 492–93, 83 L.Ed.2d 488 (1984) (a person desiring to deal with police only through counsel is not subject to further interrogation until counsel has been made

available "unless he validly waives his earlier request for the assistance of counsel.")

"After an accused has invoked his right to remain silent he is not precluded from changing his mind and making a statement. The law requires only that the statement be voluntary and with understanding of the *Miranda* rights." *State v. Morris,* 719 S.W.2d 761, 762–763 (Mo. banc 1986). A request for counsel bars further interrogation until an attorney is present, unless the accused in the interim voluntarily initiates discussion. Id. See also *State v. Oldham,* 618 S.W.2d 647 (Mo. banc 1981); *State v. Gibson,* 623 S.W.2d 93, 97 (Mo.App.1981).

■ Defendant said he wanted to talk to "someone". The deputy testified that he did not interpret this as being a lawyer and the defendant acknowledged that he asked to talk to the deputies, particularly one that he had known prior to the incident. There was a basis for the trial court to determine, as it apparently did, that defendant had initiated the further conversation, so his earlier indication that he wanted an attorney did not make the statements inadmissible.

Defendant contends in his third subpart "that the quality of the custodial interrogation was so coercive as to deny any waiver of appellant's right to remain silent and, therefore, negatived its voluntariness". Defendant bases this contention on several factors. These are his age, that he had not completed high school, that he was not furnished an attorney, after having requested to see one, that he had been held over twenty hours, handcuffed to a pole overnight, and that when the interrogation was renewed he was told how the gas chamber was used in Missouri to carry out capital punishment.

■ Defendant testified that while in the Cole County jail he had been handcuffed to a pole and that he had marks on his arm when he awoke. It is a fair inference from the testimony, in view of the indication that defendant was contemplating suicide, that the officers may have feared that he would try to take his own life and that he was so handcuffed to prevent that. There is no evidence that his being handcuffed to the pole kept him from sleeping or otherwise made him susceptible to making involuntary statements.

■ The testimony conflicted as to whether appellant, after he had made a reference to the electric chair, and he was told by one of the officers that Missouri uses the gas chamber, then asked how the gas chamber worked. He denied that he asked. An officer said he did. There was no indication in the testimony, including defendant's, that a gruesome explanation of it was made, just factual. We cannot say that any of the matters complained of under this subpoint necessarily prevented defendant's statements from being voluntary.

Defendant's remaining contention regarding the statements is that he was held for over twenty hours without being allowed to consult with an attorney in violation of § 544.170, RSMo 1978. The record is not clear that the statements complained of were made more than twenty hours after the arrest, but even if so, § 544.170, RSMO 1978 does not make these statements involuntary. It provides that persons arrested and confined shall be discharged from custody within twenty hours of the time of the arrest unless charged and while so confined shall "be permitted all reasonable hours during the day to consult with counsel or other persons in his behalf".

■ Detention beyond this limit, standing alone, is not sufficient to make an otherwise voluntary statement involuntary. *Roberts v. State,* 476 S.W.2d 490, 494 (Mo. 1972). Defendant was not interrogated continually during the period before he made the statement. He slept and apparently was left alone until he initiated further conversation with the deputies. The other factors of the detention, together with holding defendant twenty or more hours before the statements, if that occurred, does not require that we find that the statements were involuntary.

Defendant does not claim that he was prevented from consulting with any specific attorney or other person in his behalf. Counsel had not been appointed for him. The time that he was entitled to counsel as a matter of right had not yet occurred.

That starts only after adversary judicial proceedings commence. *State v. Beck*, 687 S.W.2d 155, 159 (Mo. banc 1985), cert. denied, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). This point is denied.

Defendant's remaining point states that the trial court abused its discretion in admitting into evidence a photograph of Edward Rehagen taken after he died. Defendant contends that it was unnecessary because Rehagen's wife testified that he was shot, a pathologist testified as to the cause of the death, and the photograph "would naturally inflame emotions against the appellant." The pathologist testified that the bullet which killed Rehagen entered from the back of his head and exited below his right eye.

Photographs may be admitted into evidence to show the nature or location of wounds or to corroborate testimony. *State v. Curry*, 714 S.W.2d 798, 800 (Mo.App. 1986). The trial court has broad discretion to determine the admissibility of such evidence. Id. That the photograph was in color does not require its exclusion. *State v. Smith*, 485 S.W.2d 461, 467–468 (Mo. App.1972).

The photograph was not gruesome. It showed Rehagen with his head appearing to lie on a pillow, perhaps in a casket, with a sheet pulled up to his neck. His eyes are closed. Bruising appears around his eyes under his eyebrows and above his cheek bones. No fresh blood is present, but a small dark spot is seen below the right eye, apparently where the bullet exited. The colors shown in the photograph appear to be normal and natural. We do not believe that admission of this photograph would unduly inflame the jury and find that the trial court did not abuse its discretion in allowing it. This point is denied.

The judgment is affirmed.

HOGAN, FLANIGAN and MAUS, JJ., concur.