STATE of Missouri, Plaintiff–Respondent,

v.

Harold D. HEYN, Respondent–Appellant.

No. 26633.

Missouri Court of Appeals, Southern District, Division II.

Oct. 27, 2005.

**174**

Melinda K. Pendergraph, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen.; Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

Appellant Harold Heyn ("Defendant") was charged by information with escaping from custody and committing violence against an employee of the Department of Corrections ("DOC") in violation of § 575.200 and § 217.385, respectively.[1] The case was tried to the court. The judge dismissed the escape from custody charge, but he found Defendant guilty of committing violence against a DOC employee. The court sentenced Defendant to eight years imprisonment, which is within the authorized range of punishment for a class B felony. § 217.385.1; § 558.011(2). Execution of the sentence was suspended,

and Defendant was placed on supervised probation for five years.

Defendant has appealed from the judgment of conviction. In his lone point relied on, he challenges the sufficiency of the evidence to prove that he knowingly committed violence against a DOC employee. We affirm.

**I. Standard of Review**

This Court reviews the sufficiency of the evidence in a court-tried criminal case by applying the same standard used in a jury-tried case. *State v. Mann,* 129 S.W.3d 462, 465 (Mo.App.2004). In a case tried without a jury, the trial court's findings have the force and effect of a jury verdict. Rule 27.01(b); *State v. Crawford,* 68 S.W.3d 406, 408 (Mo. banc 2002).[2] Our review is limited to determining whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.* The State may prove its case by presenting direct or circumstantial evidence connecting the defendant to each element of the crime. *State v. Howell,* 143 S.W.3d 747, 752 (Mo.App.2004).

In reviewing a challenge to the sufficiency of the evidence, we accept as true all evidence favorable to the State, including all reasonable inferences that can be drawn from the evidence. *Crawford,* 68 S.W.3d at 407–08. We disregard all evidence and inferences to the contrary. *Id.; Howell,* 143 S.W.3d at 752. The trial court determines the weight and credibility of the witnesses' testimony. *Crawford,* 68 S.W.3d at 408. The judge "may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *Id.* Our summary of the evidence

**1.** All references to statutes are to RSMo (2000).

**2.** All references to rules are to the Missouri Court Rules (2005).

presented at trial, which is set forth below, has been prepared in accordance with these principles.

## II. Facts and Procedural History

In January 2003, Pamela Burnett ("Burnett") was employed by the DOC as a probation and parole officer. She supervised people who were on probation and parole in Ozark, Douglas and Wright Counties. Defendant was one the parolees under Burnett's supervision.[3] As a condition of Defendant's parole, he was required to refrain from consuming alcohol.

On the evening of January 10th, Burnett was on duty as a DOC parole officer when she received a telephone call concerning Defendant. The caller stated that Defendant was at a local residence, drinking alcohol and taking Vicodin simultaneously. The caller was concerned because Defendant might be jeopardizing his health and because Defendant had driven himself to the residence.

Since drinking alcohol was a violation of the conditions of Defendant's parole, Burnett began an investigation. She and Douglas County Sheriff's Deputy Lonnie Huddleston ("Huddleston") drove in a marked patrol car to the residence, which was located about 10 miles from the Sheriff's office. When they arrived, Huddleston walked to the front door of the residence while Burnett waited in the patrol car. Huddleston looked through a window and saw Defendant lying on the living room floor. There were beer cans all over the floor. Huddleston motioned for Burnett to join him at the front door. After repeated knocking, Defendant finally answered the door. Burnett observed that Defendant was staggering, slow to respond and smelled strongly of alcohol. Burnett asked Defendant if he had been drinking, and he admitted he had been. Burnett also asked Defendant what he had in his pants pocket. Defendant took out bottles of Vicodin, a narcotic drug that he had been prescribed. Defendant had been ingesting that drug with alcohol. Burnett told Defendant to get his coat and his shoes because he had to go to the Sheriff's office and take a blood-alcohol test. Once the test was completed, Burnett intended to obtain a warrant to arrest Defendant for violating his parole.

After Burnett finished questioning Defendant, he was taken into custody by Huddleston for violating the conditions of his parole. Defendant was not placed in handcuffs because his right arm was in a cast. Huddleston put Defendant in the front passenger seat of the patrol car and fastened his seat belt. Burnett got into the back seat of the patrol car and sat directly behind Defendant.

While Huddleston was driving to the Sheriff's office, Defendant removed his seatbelt. As Burnett was leaning over the front seat to re-buckle Defendant's seatbelt, he opened the passenger door 12 to 18 inches. The patrol car was traveling approximately 50 m.p.h. at that time. Burnett grabbed the neck of Defendant's jacket with both hands and started yelling at him to shut the door. Defendant started moving his shoulders to make Burnett let loose of him. While struggling, Defendant told Burnett to quit, to let go of him and to leave him alone. He also wanted to know why she always did this to him.

Huddleston immediately slowed the car down, and he attempted to help Burnett by grabbing onto Defendant's jacket. Once the car stopped moving, however,

3. Defendant had been sent to prison after being convicted of a felony offense for driving while intoxicated. Burnett became Defendant's parole officer when he was released from the penitentiary.

Huddleston lost his grip on Defendant. Burnett maintained a two-handed grip on the collar of Defendant's jacket while leaning over the front seat, but he was still able to exit the vehicle. At that point, Burnett let go with her right hand and opened the back door of the patrol car about half way. She then reached through the opening between her car door and the door jamb with her right hand and grabbed Defendant's jacket. Burnett once again had both hands on Defendant's jacket collar, and he was standing on his feet outside the car with his door open. Burnett's right arm was outside the car and threaded between her door and the door jamb. Burnett told Defendant to get back in the car. He said, "No, let go of me." That same exchange was repeated two or three times while Defendant squirmed and tried to shake himself loose. He then slammed Burnett's car door. That act pinched her right forearm between the inner edge of the car's door and its body and broke her hold on Defendant. After slamming Burnett's door on her right arm, Defendant looked directly at her, said "Leave me alone" and escaped into the woods.[4] Defendant's car door remained open.

After Defendant ran away, Burnett received medical attention. No bones in her forearm were broken, but she did develop a "horrible bruise" that was approximately four inches long by one inch wide. The bruise remained visible for about two weeks after Burnett's right forearm was slammed in the car door. Burnett testified that "any reasonable person would know that slamming a door on someone would hurt you." Huddleston, who also saw Defendant slam the door on Burnett's arm, testified that the door was shut "[h]ard enough I wouldn't have wanted my arm in there...."

Defendant testified in his own behalf. Although Defendant did not recall slamming the car door on Burnett's arm, he admitted that he was "in fact trying to get away from Pam Burnett" when she was injured. Defendant also conceded that he was repeatedly told by Burnett and Huddleston to stay in the car.

After hearing the evidence and taking the matter under advisement, the trial court entered an order in August 2003 dismissing the escape from custody charge, but finding Defendant guilty of knowingly committing violence against a DOC employee. In December 2003, the court held a sentencing hearing. During that hearing, the court elaborated on the basis for its decision that Defendant was guilty of knowingly committing violence against a DOC employee:

> As far as the charge itself is concerned, the charge under 217.385, I, in doing the judgment found beyond a reasonable doubt that the defendant was a person under the supervision of Department of Corrections employee Pam Burnett and he injured her by slamming a car door on her arm and part of the reason for that specific finding was first that Ms. Burnett had, I believe her testimony showed that she had been supervising him for some time. When he was placed in the car and tried to get out of the car there was some yelling and scuffling around. At one point, my notes show that she put her hands on Mr. Heyn's jacket and [he] tried to move away. He said, "Quit it and leave me alone" or something to that effect, attempted to open the door.... One of the things that convinced me in the testimony of Pam Burnett that Mr. Heyn knew who he was dealing with and what he was doing was she said that during the time

---

4. Defendant was caught about one week later.

he had shut the door on her arm, they made [eye] contact and he said, "Leave me alone" and then ran away and I was left with the undeniable conclusion that Mr. Heyn did know who he was dealing with and he did have a purpose for getting away . . ., so I think that the prosecutor was well within his authority to charge under that statute and I feel confident in the finding of guilt beyond a reasonable doubt under that statute.

After the judgment of conviction and sentence was imposed, this appeal followed.

### III. Discussion and Decision

■ In Defendant's sole point on appeal, he contends the evidence was insufficient to prove beyond a reasonable doubt that he knowingly committed violence against a DOC employee. Defendant argues it was unreasonable for the trial court to infer that Defendant was aware that Burnett's arm was between the door jamb and the back passenger door when he shut the door because it was dark, Burnett let go of him and he was not looking at her when he shut the door. Defendant also argues there was no evidence he knew Burnett was a DOC employee. We address each argument in turn.

■ Defendant was convicted of violating § 217.385.1, which states, in pertinent part, that "[n]o offender shall knowingly commit violence to an employee of the department. . . ." Section 562.016.3 states:

A person "acts knowingly", or with knowledge,

(1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or

(2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

"Intent may be established by circumstantial evidence or may be inferred from surrounding facts." *State v. Durant,* 156 S.W.3d 524, 527 (Mo.App.2005); *State v. Theus,* 967 S.W.2d 234, 239 (Mo.App.1998). In addition, a defendant's mental state may be reasonably inferred from the act itself. *Theus,* 967 S.W.2d at 239. Viewed most favorably to the verdict and with due regard for the trial court's superior ability to assess the credibility of the testimony presented, we conclude the evidence was sufficient to support the trial court's finding that Defendant knowingly committed violence against a DOC employee.

Defendant knew that Burnett was his parole officer because she had supervised him ever since he was released from the penitentiary. Defendant knew that one of the conditions of his parole was not to consume alcohol. When Defendant answered the door, Burnett was standing there with Huddleston. Burnett was solely in charge of investigating whether Defendant had violated the conditions of his parole.[5] She obtained an admission from Defendant that he had been drinking. Burnett also recovered narcotic pills from Defendant's person that he had been mixing with alcohol. Defendant was taken into custody for a suspected parole violation, and he knew Burnett was going to make him take a blood-alcohol test at the Sheriff's office. This test would have resulted in Defendant's arrest, as well as providing evidence for use in a later parole revocation hearing. En route to the Sheriff's office, Defendant tried to escape by unfastening his seatbelt and opening the front passenger door of the patrol car. Burnett kept him from getting out of the car by grabbing his jacket collar with both

---

**5.** Huddleston testified that he asked Defendant no questions at the scene.

hands and repeatedly yelling at him to stay in the car. Defendant struggled to get free and told Burnett to let go of him and leave him alone. He also wanted to know why she always did this to him. Once the car stopped, Defendant persisted in his efforts to escape from Burnett by getting out of the vehicle. In the process, Burnett let go of Defendant with her right hand, partially opened her door and then grabbed Defendant's collar again with that hand. Burnett repeatedly told Defendant to get back in the car. He responded by saying, "No, let go of me[,]" while squirming and trying to shake himself loose. Defendant then slammed *Burnett's* car door on her right arm, which broke her grip on him. Defendant looked right at Burnett, said "Leave me alone" and escaped. Defendant's own car door, on the other hand, was left open when he fled. Defendant also admitted that he was trying to escape from Burnett when she was injured, and Defendant heard her and Huddleston telling him to stay in the car. Burnett suffered a very serious and painful bruise when Defendant slammed the back door of the patrol car on her arm.

Based on the foregoing testimony, the trial court had a right to infer that Defendant knew: (1) Burnett's right arm, which was gripping Defendant's jacket collar, was between the car door and the door jamb; (2) slamming *Burnett's* car door could break her grip, thereby allowing Defendant to escape; and (3) the act in slamming the car door on Burnett's arm was practically certain to injure her. We believe these conclusions are amply supported by the direct and circumstantial evidence before the trial court. Defendant's contrary argument is unavailing because it amounts to nothing more than a complaint that the trial court drew the wrong inferences from the evidence presented.

We also find no merit in Defendant's second argument that the State failed to prove Defendant knew Burnett was a DOC employee. Burnett testified at trial that she worked for the DOC as a probation and parole officer. The DOC supervises and manages all correctional centers, as well as probation and parole in this state. *See* § 217.015.1 RSMo Cum.Supp. (2004).[6] Defendant was in the custody of the DOC when he was in the penitentiary, and Burnett was assigned the responsibility of supervising Defendant when he was released on parole. They had an on-going offender/parole officer relationship that continued through January 10, 2003. On that date, Burnett was acting in her official capacity as Defendant's parole officer while conducting an investigation of whether Defendant had violated the conditions of his parole. Defendant admits that he knew Burnett was his parole officer and that he was trying to escape from her when she was injured. The record supports the trial court's "undeniable conclusion that Mr. Heyn did know who he was dealing with."

Defendant's point on appeal is denied, and the judgment of the trial court is affirmed.

SHRUM, P.J., and BARNEY, J., Concur.

---

**6.** Although this statute was amended in 2001, the changes have no bearing on the issues presented in this appeal.