STATE of Missouri, Plaintiff–
Respondent,

v.

Thomas Andrew VIVONE,
Defendant–Appellant.

Thomas Andrew VIVONE,
Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

Nos. 17355, 17945.

Missouri Court of Appeals,
Southern District,
En Banc.

June 17, 1993.

Motion for Rehearing or Transfer to
Supreme Court Denied July 8, 1993.

Application to Transfer Denied
Aug. 17, 1993.

Thomas D. Carver, Springfield, for appellant.

William L. Webster, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for respondent.

GARRISON, Judge.

Defendant Thomas Vivone pleaded not guilty by reason of mental disease or defect to the charge of murder in the first degree under § 565.020.1.[1] A jury found him guilty and he was sentenced to impris-

---

1. All references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

onment for life without eligibility for probation or parole. Defendant's trial counsel filed a motion for new trial which was overruled. Defendant also filed a Rule 29.15 motion seeking relief from the conviction by reason of alleged ineffective assistance of counsel.[2] Appointed counsel thereafter filed an amended 29.15 motion which was overruled after an evidentiary hearing. Defendant filed notices of appeal from the conviction as well as denial of the Rule 29.15 motion.

■ Defendant's points relied on all concern his postconviction motion and do not reference issues concerning a direct appeal from the conviction.[3] The direct appeal is therefore considered waived or abandoned. *State v. Sykes*, 436 S.W.2d 32, 33 (Mo. 1969); *State v. Hudson*, 815 S.W.2d 430, 431 (Mo.App.1991); *State v. Berry*, 798 S.W.2d 491, 497 (Mo.App.1990).

In this appeal, the contentions raised by defendant can be summarized as follows: Trial counsel was ineffective in (1) not objecting to testimony by the State's psychiatrist; (2) not filing a motion to suppress defendant's confession; (3) failing to either challenge for cause or strike a venireperson; (4) not seeking a new trial based on the trial court's refusal to tender a voluntary manslaughter instruction; and (5) thirty-three separate other ways listed in the brief which generally cover most of counsel's conduct in the representation of defendant. In addition, defendant alleges in Point VI that the prosecutor and trial court engaged in conduct which created a fundamental unfairness and resulted in his unlawful conviction.

## FACTS

In the early morning hours of February 11, 1989, defendant was drinking with the deceased, Robert Demster, and Breck Lingbeck at Demster's apartment. Deceased eventually went to bed in a separate room of the apartment. According to defendant, he and Lingbeck helped Demster to the bedroom because he was intoxicated. A later blood analysis showed that his blood alcohol content was in excess of .36. The testimony of Lingbeck and defendant differs significantly about the events which occurred after Demster went to bed.

According to Lingbeck's testimony, he and defendant continued to drink and talk until Lingbeck said he was going to bed on the living room sofa and indicated defendant should leave. Defendant began beating Lingbeck, first with his fists and later with a frying pan. Lingbeck testified that he got a pocket knife out in an effort to defend himself but lost it in the struggle. Defendant picked up the pocket knife and began stabbing Lingbeck, who sustained six stab wounds to the front of his body and five in his back, a broken ankle and a punctured lung.

According to defendant's testimony, after Demster went to bed defendant went to his apartment, which was next door to Demster's, to retrieve some musical tapes. When he returned, he heard a noise in the bedroom and discovered Demster and Lingbeck preparing to engage in a homosexual act. Defendant testified he was repulsed by this and attempted to leave, but Lingbeck prevented defendant's exit by putting his foot in front of the door and then pulled a pocket knife, threatening to kill defendant. Defendant, who had boxing experience, began striking Lingbeck with his fists and then with a frying pan.

The evidence was undisputed that, after the altercation with Lingbeck, defendant left Lingbeck on the floor of the living room, went to his apartment next door for the purpose of getting a large kitchen knife, and returned to the Demster apartment. He then stabbed Demster in the chest with the kitchen knife. Defendant

**2.** Defendant's counsel on this appeal is not the same as the appointed counsel who represented him at trial.

**3.** Point VI in defendant's brief refers to trial court and prosecutorial misconduct as opposed to direct allegations of ineffectiveness of counsel. For the reasons stated in the discussion of that point, we consider it as being presented as a part of the Rule 29.15 claims. In addition, defendant's counsel acknowledged at oral argument of this case that all the points on appeal relate to the postconviction motion.

testified that Demster, who was sitting on the edge of the bed, made homosexual advances to him and that defendant then stabbed him after a scuffle. A pathologist testified that Demster had two stab wounds to the back caused by a smaller knife than the kitchen knife found in his chest; the fatal stab wound to Demster was almost exactly perpendicular to the body; there was no evidence of any defensive measures by which Demster attempted to protect himself against the stabbing; there was nothing about the wound to indicate Demster was standing or moving when it occurred; and his findings were consistent with Demster being unconscious when he was killed.

Sometime later, after apparent attempts to clean up some of the blood, defendant returned to his apartment and informed his mother that he had killed two people next door. She called the police, who arrived in a matter of minutes. The first two officers on the scene were Doug Leeper and Scott Penner. Defendant knew Officer Penner and immediately said, "I just killed two people next door." Shortly after that, defendant again said, "Scotty, I ... up; I killed them." Officer Leeper looked in the window of Demster's apartment, saw Lingbeck's body on the floor, and motioned to Officer Penner that he could see a body. Officer Penner then handcuffed defendant, gave him a Miranda warning, and took him to the patrol car where he began to bandage defendant's finger which was lacerated. Defendant continued to make statements, saying that an argument had started between him and Lingbeck; that he began hitting Lingbeck in the head and face with his fists; and eventually said, "Scotty, I'm going to get life for this, aren't I?"

When Officer Penner took defendant to the Branson Police Department, he again advised him of his Miranda rights. He was told that he would be charged with first degree murder, armed criminal action and first degree assault. Defendant said that he did not want to give a formal statement but would rather talk with a lawyer. Later, he was overheard telling his mother on the phone that, "I know I lost my temper."

Shortly after noon, defendant asked to see Officer Penner and said he needed to talk with someone. The officer told him he would need to have a lawyer before he could speak with him and that a lawyer would be appointed for him. According to Officer Penner, defendant proceeded to make various statements to him which are summarized later in this opinion.

## DISCUSSION

Defendant alleges ineffectiveness of trial counsel. Although defendant's points relied on do not specifically say so, we assume his complaint is the motion court's overruling of the Rule 29.15 motion in which ineffectiveness of counsel was alleged.

■ In order to prevail on a claim of ineffective assistance of counsel, defendant must show (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). Both prongs of the test are required in order to prevail on a claim of ineffective assistance of counsel. *Id.* Movant has the burden of proving his grounds for relief by a preponderance of the evidence. Rule 29.15(h).

■ In reviewing claims of ineffective assistance of counsel, there is a presumption that counsel's conduct was appropriate. The United States Supreme Court has said:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.... A fair assessment of attorney performance requires that every effort be made to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–695.

■ The required finding of prejudice is not presumed from a showing of deficient performance of counsel but requires affirmative proof. In proving prejudice, it is insufficient to show that trial counsel's errors had some conceivable effect on the outcome of the proceedings, but rather there must be proof of a reasonable probability that the result would have been different but for the errors. *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 697; *Sidebottom v. State,* 781 S.W.2d 791, 796 (Mo. banc 1989).

■ In reviewing the motion court's denial of postconviction relief, we are limited to a determination of whether the findings and conclusions of the court are clearly erroneous. Rule 29.15(j); *Sanders v. State,* 738 S.W.2d at 857. Findings and conclusions are clearly erroneous only if a review of the entire record leaves the appellate court with the definite and firm impression that a mistake was made. *Id.*

### POINT I

■ Defendant argues in Point I that trial counsel was impermissibly ineffective in failing to object to trial testimony of Dr. William Logan, a psychiatrist who was employed by the State to examine defendant. Defendant's particular complaints deal with Dr. Logan's comparison of police reports, physical evidence, photographs and autopsy reports to the accounts given him by defendant. The differences were characterized by Dr. Logan as "inconsistencies"

and were offered without objection from defendant's trial counsel.

Trial counsel testified at the hearing on defendant's 29.15 motion that his failure to object to Dr. Logan's testimony was intentional and consistent with his trial strategy. He believed the best defense strategy was to just let Dr. Logan talk because his demeanor and testimony were blatantly one-sided, which counsel thought was having a negative impact on the jury. Trial counsel summarized his approach to Dr. Logan's testimony by saying: "[I]t became obvious to Tom, it became obvious to me, and I say that because we discussed it, that he was destroying his own credibility with the jury because of the aggressive nature he was attempting to deal with Tom as the defendant, and I made a conscious decision based on my trial strategy to allow him to continue to testify to things that may have been objectionable, simply because I thought he was destroying his own testimony...."

It is the exceptional case where a court will find ineffective assistance of trial counsel from the exercise of trial strategy. This is not to say that all ineffective defense can be excused by labeling it "trial strategy." Nevertheless, we are admonished by the Supreme Court to be "highly deferential" in scrutinizing counsel's performance and to make "every effort to eliminate the distorting effects of hindsight." *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. This is especially true in the uncertain arena of trial advocacy where the same strategy could be labeled as brilliant if successful and deficient if not.

The motion court, referring to the standards under *Strickland v. Washington, supra,* found that trial counsel's failure to object to Dr. Logan's opinions concerning what he termed "inconsistencies" constituted failure to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances. Therefore, the motion court found that the first prong of the *Strickland* test was satisfied. The motion court, however, determined that it did not result in prejudice.

Defendant mounts the argument that prejudice did result from Dr. Logan's unchallenged testimony. He concludes that the State used Dr. Logan to improperly attack his credibility under the guise of a discussion concerning his competency. It should be noted, however, that while the testimony may have also had the effect of attacking defendant's credibility, Dr. Logan testified it was important, in formulating his opinion of defendant's mental condition, to assess the truthfulness of what defendant told him, which he could do by comparing defendant's statements with the physical evidence. In fact, defendant's own psychiatrist testified that if defendant had been lying to him about the circumstances of the occurrence, it could have a bearing on his opinion of mental capacity. In addition, the evidence from which the conclusions of "inconsistency" were drawn was before the jury and available for them to draw the same conclusions.

Defendant also argues that he was prejudiced from counsel's failure to object because the element of "deliberation was, most essentially, a product of Dr. Logan's uncontroverted testimony." The only portions of Dr. Logan's testimony complained of which we could perceive as having any impact on the issue of deliberation were: (1) testimony that a blood type other than the deceased's was found on his bed, with Dr. Logan's conclusion that this indicated some kind of struggle or attempt to move the body; (2) the wound to the deceased's chest was straight in, thereby suggesting that he was lying flat when stabbed; and (3) there were no defensive wounds, thereby indicating he was either asleep or caught off guard when he was stabbed.

This evidence was largely cumulative of other evidence from a pathologist as well as a chemist. There was, however, other significant evidence of deliberation which was uncontroverted. For example, by defendant's own testimony, he first beat and stabbed Lingbeck, returned to his apartment to obtain a large kitchen knife, and returned to the deceased's apartment where he delivered the fatal stab wound. Also, the deceased had two smaller stab wounds in his back which could not have

been administered by the large kitchen knife. This permits the conclusion that the deceased was first stabbed in the back with a smaller knife similar to that used to stab Lingbeck, defendant left to obtain another knife, when he returned he rolled the deceased over from his stomach to his back, and stabbed him with the larger instrument.

We are unable to conclude that there is a reasonable probability that, but for trial counsel's failure to object to Dr. Logan's testimony, the result of this case would have been different because the jury would have had a reasonable doubt respecting defendant's guilt. This is the test established in *Strickland v. Washington*, 466 U.S. at 693, 104 S.Ct. at 2068, 80 L.Ed.2d at 697. There, the Supreme Court said:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

*Id.* 466 U.S. at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–693. Here, the trial court, in compliance with § 552.030(5), read MAI–CR 3d 300.20 prior to Dr. Logan's testimony. By that instruction, the jury was told that if the doctor testified about statements and information received by him in connection with his inquiry into the mental condition of defendant, they were not to consider that testimony as evidence that defendant did or did not commit the acts charged. A similar instruction (MAI–CR 3d 306.04) concerning all the psychiatric testimony was given at the close of the case. In addition, the State's closing argument made no direct reference to the portions of Dr. Logan's testimony referenced in this point, and thus took no additional advantage from the testimony. As indicated above, it was not Dr. Logan's testimony which established the strongest evidence of deliberation for the first degree murder conviction, but rather that of defendant himself. If the testimony of Dr. Logan which is complained of here were completely eliminated from the record, there would still be evidence making a strong case of

first degree murder and from which the jury could reasonably conclude that defendant was not suffering from a mental disease or defect excluding responsibility. The motion court's findings with reference to Point I are not clearly erroneous. Point I is, therefore, denied.

### POINT II

Defendant complains in Point II of the ineffectiveness of his trial counsel in failing to file a motion to suppress a confession. The "confession" in question was an oral statement made to police officer Scott Penner the afternoon following defendant's arrest.

Defendant's argument is that he had previously told the officers he did not want to make a statement without talking with counsel. Defendant, therefore, contends that the statement would have been suppressed under authorities such as *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983); and *State v. Oldham,* 618 S.W.2d 647 (Mo. banc 1981). Those cases stand for the proposition that a statement obtained from an accused after he expressed a desire for assistance of counsel must result from communication voluntarily, knowingly, and intelligently initiated by the accused.

In the instant case, Officer Penner again gave defendant a Miranda warning when they arrived at police headquarters at 4:57 a.m. When asked if he would give a formal statement, defendant responded that he would rather talk to a lawyer. At approximately 12:40 p.m., defendant sent word to Officer Penner that he wanted to speak with him. He said he couldn't eat or sleep and needed to talk with someone. The officer said, "Tom, like I told you before, per the Miranda, if you want to talk to somebody, you're going to have to get a lawyer or counsel here before I can talk to you." According to Officer Penner, defendant still wanted to talk with him and proceeded to tell him what had happened. Summarized, defendant told Officer Penner that Lingbeck had swung at him; he ducked and tackled Lingbeck; there was a

pocket knife lying by Lingbeck and he began stabbing him with it; he hit Lingbeck with a frying pan or skillet in the head; he kicked Lingbeck in the stomach and went next door to get a larger knife; when he came back, Lingbeck was not moving so he went in the bedroom and stabbed Demster while he was asleep; he then went back and kicked Lingbeck in the stomach; and began cleaning the apartment before he left. He told Officer Penner that he stabbed Demster because he thought he was a witness and acknowledged that he realized what he was doing at the time.

Defendant argues that failure to suppress this statement was prejudicial because it deleted any mention of homosexual activity between the deceased and Lingbeck which defendant says caused his panic reaction and was crucial to his defense of lack of responsibility by reason of mental disease or defect. Defendant made no mention of those matters until he was evaluated for his defense of mental disease or defect months later.

Trial counsel acknowledged, at the beginning of the trial, defendant's request that a motion to suppress be filed. He stated that he had heard of a Supreme Court decision indicating that when a defendant has requested an attorney no interrogation can occur without an attorney present, unless the accused "was the person who actively sought out an interview with the investigating officer." Based on his understanding of that case, trial counsel advised defendant "that the facts of this case preclude him from raising that as an issue."

■ Failure to pursue suppression of evidence does not constitute ineffective assistance of counsel if the motion would have been rejected. *State v. Leisure,* 838 S.W.2d 49, 59 (Mo.App.1992). The motion court in the instant case found that, while trial counsel should have filed and obtained a ruling on a motion to suppress the statement, the conversation was initiated by defendant voluntarily, knowingly, and intelligently and the statement was therefore not inadmissible. As a result, the motion court found no prejudice resulted so as to satisfy

the second prong of the test for ineffective assistance of counsel under *Strickland.*

■ The record supports the motion court's finding that it was defendant who initiated the conversations with Officer Penner and that he did so voluntarily, knowingly and intelligently. Defendant acknowledged in his testimony that Officer Penner had discontinued any attempt to talk with him after he indicated he wanted counsel present and that the subsequent conversation occurred as a result of defendant's request. These facts distinguish the instant case from *State v. Oldham, supra,* and are consistent with the ruling in *State v. Young,* 781 S.W.2d 212 (Mo.App.1989). As indicated in *State v. Smith,* 747 S.W.2d 678, 682 (Mo.App.1988), a defendant is not prevented from changing his mind after having requested counsel and making a statement so long as he voluntarily initiates the discussion. As in *State v. Bittick,* 806 S.W.2d 652, 658 (Mo. banc 1991), there is no evidence here of any police coercion, intimidation, or withholding of food, water or other physical needs from the defendant.

■ The test for voluntariness of a confession is whether, in the light of the totality of the circumstances, the defendant was deprived of a free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed. *State v. Lytle,* 715 S.W.2d 910, 915 (Mo. banc 1986). Defendant's allegation that the statement was not voluntarily or intelligently given because he had not slept for twenty-four hours, had not eaten and was still intoxicated is not binding on the motion court. While the evidence indicated that shortly following the incident defendant was given a breathalyzer test which resulted in a reading of .16 and that analyzation of his blood revealed a blood alcohol content of .21, the conversation in question occurred over six hours later and included defendant's detailed recollection of individual blows struck and specific facts of the occurrence.

■ We conclude that the motion court's finding that no prejudice inured to defendant by reason of the failure to file a motion to suppress the statement was not clearly erroneous. We therefore deny Point II.

### POINT III

■ In Point III defendant alleges the ineffective assistance of trial counsel in failing to challenge for cause or peremptorily strike a venireperson. The thrust of this argument is the contention that the juror in question (Ms. Kaneaster) indicated she could not follow the court's instruction with regard to guilt or innocence by reason of mental disease or defect.

The matter arose when defendant's trial counsel asked a series of voir dire questions concerning the venirepersons' feelings about the punishment given the person who attempted to assassinate President Reagan, and in particular their feelings about the finding in that case of not guilty because of mental disease or defect. One of the questions to which Ms. Kaneaster responded was:

> And, how many found the result of that case offensive because they thought the person who attempted to assassinate President Reagan should have had prison time?

No individual voir dire examination of Ms. Kaneaster was conducted, and we do not know whether her response was occasioned by opinions about the defense of mental disease or defect. Thereafter, defendant's trial counsel and the prosecuting attorney agreed that the court could read MAI–CR 306.02 to the jury panel and inquire if they would follow that instruction if it were submitted. This was done and there was no response by Ms. Kaneaster to the question, "Now, is there anybody that feels they can't follow that particular instruction?" Her failure to respond to this question could be construed as an indication she would be able to follow the instruction on mental disease or defect. The main thrust of defendant's argument is, therefore, not supported by the record.

At the evidentiary hearing on defendant's Rule 29.15 motion, trial counsel tes-

tified that his acceptance of Ms. Kaneaster as a juror resulted from his desire to have jurors he perceived to be educated, articulate and "thinkers." He also mentioned the importance of the "feel" trial counsel gets by observing potential jurors, including "eye-to-eye contact."

We do not find that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney as a result of the matters alleged in this point. One of the areas of trial advocacy that necessarily relies on the "feel" and "intuition" of trial counsel is that of jury selection. Certainly this is an area that does not readily lend itself to successful claims of ineffective assistance of counsel. The conclusion we reach on this point is consistent with that in *State v. Harris*, 827 S.W.2d 255, 257 (Mo.App.1992) (the court accepted trial counsel's explanation that failure to strike jurors was a matter of trial strategy), and *Grubbs v. State*, 760 S.W.2d 115, 120 (Mo. banc 1988) (the court noted there was no indication the juror would be unable to follow the instruction of the court). It is also noteworthy, as in *Ogle v. State*, 807 S.W.2d 538, 544 (Mo.App.1991), that there was no evidence here that defendant requested trial counsel to take any action concerning Ms. Kaneaster.

The motion court found that Ms. Kaneaster did not indicate an inability to follow the court's instructions and that failure to strike her fell within the area of trial strategy. From the record presented, we do not find trial counsel's failure to challenge or strike this potential juror deviated from the customary skill or diligence of the reasonably competent attorney under those circumstances.[4] Accordingly, the motion court's ruling was not clearly erroneous. Point III is ruled against defendant.

4. Since we find that counsel's trial performance as alleged in this point did not deviate from that of the reasonably competent attorney under the same circumstances, we do not reach the issue of whether prejudice to defendant need be proven or is presumed if there is a demonstration of juror bias. *See Presley v. State*, 750 S.W.2d 602, 607 (Mo.App.1988).

5. The requirements for a point relied on in an appellate brief are the same in a criminal case under Rule 30.06(d) as for a civil case under

### POINT IV

In Point IV defendant claims trial counsel was ineffective for failure to include, in a motion for new trial, the court's failure to give a voluntary manslaughter instruction. This particular allegation of ineffectiveness of trial counsel was not included in defendant's 29.15 motion or the amended motion filed by appointed counsel and, therefore, was waived. *Hoffman v. State*, 816 S.W.2d 930, 931 (Mo.App.1991); *Blakely v. State*, 795 S.W.2d 570, 572 (Mo. App.1990). Point IV is, therefore, denied.

### POINT V

Defendant's Point V alleges: "At the specific request of appellant ... trial counsel was ineffective in his assistance to appellant when he failed to do the following acts:" and then lists thirty-three specifications by which trial counsel is alleged to have been ineffective. This point is insufficient for several reasons.

The thirty-three subparagraphs under this point relate to a multitude of issues covering almost the entire scope of representation of defendant by trial counsel. Statement of a point is insufficient when it groups together multiple contentions not related to a single issue. *Thummel v. King*, 570 S.W.2d 679, 688 (Mo. banc 1978).[5]

More fundamentally, this point and the subparagraphs listed under it fail to comply with either Rule 30.06(d) or Rule 84.04(d) by stating "briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous."[6] Examples of the subparagraphs listed are:

Rule 84.04(d). In addition, the Committee Note to Rule 30.06 states that *Thummel v. King, supra,* is applicable to briefs filed pursuant to that rule.

6. Points I through IV of defendant's brief also fail to comply with Rules 30.06(d) and 84.04(d) for the same reasons. In those points, however, we were able to glean the specific complaints from the argument sections of the brief and decided the questions based upon our desire to decide cases on the merits where possible. *See*

Trial defense counsel failed to investigate the backgrounds of Robert Demster and Breck Lingbeck.

Trial defense counsel failed to object to the submission of first and second degree murder instructions.

Trial defense counsel failed to arrange for a survey of available fingerprints at the crime scene.

Trial defense counsel failed to object to the fact that there was no grand jury involvement in the charging of appellant.

Trial defense counsel failed to adequately cross-examine and reveal the perjury of witness Scotty Penner.

Trial defense counsel failed to gather forensic evidence independently and therefore, limited appellant's ability to contest forensic evidence presented by the prosecution.

Points relied on which are contrary to the mandatory requirements of Rule 84.04(d) and Rule 30.06(d) preserve nothing for appellate review. *Pruitt v. State,* 792 S.W.2d 641, 642 (Mo.App.1990). The thirty-three subpoints listed by defendant under this point constitute nothing more than abstract assignments of error. As such, they are insufficient. *Kennedy v. State,* 771 S.W.2d 852, 856 (Mo.App.1989).

Defendant's Point V and its thirty-three subparagraphs consume four typewritten pages of the brief, while the argument under that point contains three pages. Most of the subparagraphs listed under this point are not pursued individually in the argument section of defendant's brief. Those points are, therefore, abandoned or waived on appeal. *State v. Boyer,* 803 S.W.2d 132, 136 (Mo.App.1991).

The matters which are discussed by defendant in the argument section of his brief pertain generally to failure of trial counsel to interview or depose potential witnesses, failure to object to improper evidence and argument by the prosecution, and failure to bring procedural irregularities to the court's attention. We have reviewed those matters for plain error. Our review of those matters does not reveal any plain error affecting substantial rights which re-

sulted in manifest injustice or a miscarriage of justice. Point V is, therefore, denied.

### POINT VI

■ Point VI in defendant's brief states:

At the specific request of appellant ... the prosecution and trial court engaged in conduct at trial which produced a fundamental unfairness in the proceedings and resulted in appellant's unlawful conviction for first degree murder.

The point itself is insufficient under Rules 30.06(d) and 84.04(d) because it constitutes nothing more than an abstract statement and wholly fails to state what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous.

We construe Point VI to be raised as a part of defendant's 29.15 motion and not as a part of a direct appeal from the conviction. All transcript references are to the transcript of the evidentiary hearing on the 29.15 motion where defendant made conclusory allegations with reference to specifications in his postconviction motions. Additionally, the only authorities cited by defendant under this point are *Schneider v. State,* 787 S.W.2d 718, 721 (Mo. banc 1990); *Walls v. State,* 779 S.W.2d 560, 564 (Mo. banc 1989); and *Roberts v. State,* 775 S.W.2d 92, 96 (Mo. banc 1989). Each of those cases stand for the proposition that claims of trial error are not cognizable in a Rule 29.15 motion except where fundamental fairness requires otherwise and only in rare and exceptional circumstances. Defendant, in the argument section of his brief, alleges that "the circumstances set forth herein are exceptional and have resulted in a fundamental unfairness to appellant...."

The deficiency of this point relied on is not saved by the argument section of defendant's brief where thirty numbered paragraphs list the alleged trial court or prosecutorial misconduct. Those paragraphs are general and conclusory in na-

*State v. Sloan,* 756 S.W.2d 503, 505 (Mo. banc    1988).

ture and themselves fail to state wherein and why there was allegedly a fundamental unfairness or why there are rare and exceptional circumstances here which would authorize these allegations to be considered in a Rule 29.15 context. *See Tate v. State,* 773 S.W.2d 190, 193 (Mo.App.1989).

Our review for plain error under this point does not reveal manifest injustice or a miscarriage of justice and the point is, therefore, denied.

The judgment is affirmed.

All concur.