STATE of Missouri, Plaintiff–
Respondent,

v.

Thomas VIVONE, Defendant–
Appellant.

No. 17355.

Missouri Court of Appeals,
Southern District,
Division One.

July 23, 1999.

Motion for Rehearing and Transfer Denied
Aug. 13, 1999.

Emmett D. Queener, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Barbara K. Chesser, Asst. Atty. Gen., Jefferson City, for Respondent.

KENNETH W. SHRUM, Judge.

Thomas Vivone (Defendant) pleaded not guilty by reason of mental disease or defect to the charge of murder in the first degree, § 565.020.1.[1] He was convicted by a jury and sentenced to life imprisonment without eligibility for parole. This court ruled in *State v. Vivone*, 857 S.W.2d 489 (Mo.App.1993) (en banc), that Defendant had abandoned or waived his initial appeal of the judgment of conviction and sentence. *Id.* at 491[1]. On November 4, 1998, this court withdrew its mandate in Defendant's direct appeal (No. 17355).[2] This appeal followed. We affirm.

## FACTS

Defendant does not challenge the sufficiency of the evidence. A detailed account of the facts are contained in *Vivone*, 857 S.W.2d at 489.

Briefly, the record reveals that in the early morning hours of February 11, 1989, Defendant was drinking with Robert Dem-

---

1. All statutory references are to RSMo 1986 unless otherwise indicated.

2. On October 13, 1998, a federal district court granted Defendant's petition for a writ of habeas corpus. The district court entered its order after Missouri's Attorney General made the concession that Defendant had "received ineffective assistance of direct appeal [counsel]" and "request[ed] that [the federal district court] issue a limited grant of relief directing that [Defendant] be allowed to file a new direct appeal with the assistance of counsel pursuant to the holding in *Penson [v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) ]." When the issue of the effectiveness of Defendant's direct appeal counsel was presented to this court via Defendant's motion to recall the mandate, the State made no response. At that time, this court revisited the record of Defendant's criminal trial and concluded that Defendant's direct appeal counsel was not ineffective.

ster and Breck Lingbeck at Demster's apartment. Demster got drunk and went to bed.[3] Defendant and Lingbeck began fighting. According to Lingbeck, Defendant assaulted him after Lingbeck told Defendant to leave. Defendant first struck Lingbeck with his fists and then hit him with a frying pan. Lingbeck got his pocket knife to defend himself but dropped it. Defendant picked up Lingbeck's knife and stabbed him repeatedly. Lingbeck received six stab wounds to the front of his body, five to his back, and sustained a broken ankle and a punctured lung. Defendant then left the Demster apartment and went next door to his apartment to get a larger knife.

After retrieving a kitchen knife, Defendant returned to the Demster apartment. He saw that Lingbeck was not moving. At that point, he went to the bedroom where Demster lay and stabbed him fatally in the chest as he slept. A pathologist testified that two stab wounds in Demster's back were caused by a smaller knife than the kitchen knife found in his chest but that the chest wound caused his death. The pathologist also testified that the fatal wound was exactly perpendicular to the body, there was no evidence of any defensive measures by which Demster tried to protect himself, and there was nothing about his wounds to indicate Demster was standing or moving when the stabbings occurred. The pathologist further testified that his findings were consistent with the

theory that Demster was unconscious when he was killed. Defendant told an investigating officer he had stabbed Demster because he (Defendant) thought Demster was a witness.

### DISCUSSION AND DECISION

*Point I: Plain Error: Instructions MAI–CR3d 310.12 & 310.10*

In Point I, Defendant contends, *inter alia*, that the trial court plainly erred in giving Instruction No. 9 (patterned after MAI–CR3d 310.12) and "in not assuring that the Instruction was submitted in compliance with the Notes on Use."[4] He says that adherence to the Notes on Use would have altered Instruction No. 9 and required an additional instruction patterned after MAI–CR3d 310.10.

Instruction No. 9 was requested by the State and, as submitted, provided:

"If you find and believe from the evidence that the defendant was involved in offenses other than the one for which he is now on trial, you may consider that evidence on the issue of motive or intent of the defendant and you may also consider such evidence for the purpose of deciding the believability of the defendant and the weight to be given to his testimony."

██ The State presented evidence that Defendant struck, beat, and stabbed Lingbeck just prior to the time he stabbed and killed Demster. Although such evidence

---

**3.** A postmortem examination of Demster revealed his blood alcohol content to be in excess of 0.36%.

**4.** The relevant part of MAI–CR3d 310.12 reads as follows:
"If you find and believe from the evidence that the defendant (was involved in) ... (offenses) other than the one for which he is now on trial (and other than the offense mentioned in Instruction No. ___), you may consider that evidence on the issue of (iden-

tification) (motive)(intent)(absence of mistake or accident)(presence of a common scheme or plan)( [*Specify other purpose for which the evidence was received as substantive evidence of guilt.*] ) of the defendant (and you may also consider such evidence for the purpose of deciding the believability of the defendant and the weight to be given to his testimony). (You may not consider such evidence for any other purpose.)"

was not admissible to show Defendant's propensity to assault or kill Demster, *see State v. Skillicorn,* 944 S.W.2d 877, 886[13] (Mo.banc), *cert. denied,* 522 U.S. 999, 118 S.Ct. 568, 139 L.Ed.2d 407 (1997), it was admissible as it had a legitimate tendency to prove the Demster crime. *See State v. Trimble,* 638 S.W.2d 726, 732–33 (Mo.banc 1982). Specifically, evidence that Defendant assaulted Lingbeck tended to establish Defendant's motive and intent to kill Demster. *Id.*

With the evidence of Defendant's assault upon Lingbeck in the record, the jury could have found that Defendant "was involved in offenses other than the one for which he was on trial," i.e., first-degree assault of Lingbeck, § 565.050, and armed criminal action against Lingbeck, § 571.015. Accordingly, Instruction No. 9 would have correctly instructed the jury *if* the only evidence of other crimes had been Defendant's uncharged offenses against Lingbeck. *See* MAI–CR3d 310.10, Notes on Use 3(d). This was not the case here, however.

▪ The State also presented evidence that Defendant had been convicted of crimes wholly unrelated to the murder of Demster and the assault of Lingbeck. Specifically, the State's cross-examination of Defendant revealed that he had three prior convictions, two of which were for driving while intoxicated. Evidence of Defendant's prior convictions was admissible. This follows because once Defendant testified, he subjected himself to contradiction and impeachment as any other witness and his credibility was subject to challenge by

proof of his prior convictions. *State v. Hoopingarner,* 845 S.W.2d 89, 94[16] (Mo. App.1993); §§ 491.050 and 546.260.1. Defendant does not argue otherwise.

Defendant contends, however, that the trial court plainly erred by submitting only Instruction No. 9 to the jury on the issue of other offenses as that instruction allowed the jury to consider both the uncharged offenses against Lingbeck *and* Defendant's prior convictions on the issue of Defendant's motive or intent in connection with the crimes against Demster. He insists that once the State asked for an instruction patterned after MAI–CR3d 310.12, the trial court should have, *sua sponte,* modified Instruction No. 9 and should have given another instruction patterned after MAI–CR3d 310.10.[5] In making this argument, Defendant points to the Notes on Use for each instruction.

The Notes on Use for MAI–CR3d 310.12 state that its use "is governed by Notes on Use 3 under MAI–CR3d 310.10" and the Notes on Use following MAI–CR3d 310.12. The relevant portion of note 3 under MAI–CR3d 310.10 states:

"(a) Explanation of terms in Notes on Use:

"(i) Prior crimes committed by the defendant will be referred to as either 'related' or 'unrelated.' 'Related crimes' are those which may go to show intent, motive, etc. Such crimes may be shown by the state as substantive evidence of guilt of the crime on trial, whether the defendant testifies or not. See MAI–CR3d 310.12. In addition, if defendant takes the stand as a witness, proof of

---

**5.** The relevant part of MAI–CR3d 310.10 reads:

"If you find and believe from the evidence that defendant (was convicted of) . . . the offense of [*specify the offense* ], you may consider that evidence for the sole purpose of deciding the believability of the defen-

dant and the weight to be given to his testimony and for no other purpose. (You must not consider such previous (conviction) . . . as any evidence that the defendant is guilty of any offense for which he is now on trial.)"

conviction of, pleas of guilty to, pleas of nolo contendere to, and findings of guilt of 'related crimes' may be considered as impeaching his credibility as a witness.

"(ii) 'Unrelated crimes' are those convictions, pleas of guilty, pleas of nolo contendere, and findings of guilt which may be considered solely for the purpose of impeaching the credibility of the defendant if he testified.

. . . .

"(g) If the defendant testifies and if there is evidence that the defendant was involved in but not 'convicted, etc.' of a 'related crime' but was 'convicted, etc.' of an 'unrelated crime,' then both MAI–CR3d 310.10 and 310.12 should be given. In such case, in MAI–CR3d 310.12

"(1) the phrase 'involved in' will be used instead of the other parenthetical phrases,

"(2) the phrase 'and other than the offense mentioned in Instruction No. ___' will be included,

(3) the parenthetical reference to believability will be omitted, and

(4) the last sentence in parentheses will be included."

■ Defendant is correct that the applicable Notes on Use were not followed here. However, Defendant did not preserve this error for appellate review. This follows because Defendant did not object to Instruction No. 9 on the basis that it failed to follow the Notes on Use, he did not proffer correct versions of MAI–CR3d 310.10 and 310.12 for submission to the jury, and he failed to state his claims of instructional error in his motion for new trial. *See State v. Howard,* 896 S.W.2d 471, 482 (Mo.App.1995).

■ Even so, Defendant requests that we examine his first point under the plain error standard of Rule 30.20.[6] He asserts that this error affected his constitutionally guaranteed right to a fair trial and is, therefore, susceptible to review for plain error. *See State v. Frankenberg,* 876 S.W.2d 286, 289 (Mo.App.1994). He maintains that giving Instruction No. 9 without instructing per MAI–CR3rd 310.10 misdirected the jury to the point of creating a miscarriage of justice.

*Frankenberg* is the only case we find and is the only one cited by Defendant in which an appellate court reversed a conviction under the plain error rule based on erroneous use of MAI–CR3d 310.10 or MAI–CR3d 310.12. Thus, we review the pertinent facts of that case.

Frankenberg was convicted of an act of sodomy on an eleven-year-old female victim. The victim's testimony established the elements of the crime charged. Frankenberg testified and denied the victim's allegations. He admitted convictions for prior unrelated charges of selling drugs, burglary, and stealing. There was no evidence of related but uncharged crimes. Even so, the trial court gave an instruction patterned after MAI–CR3d 310.12. This instruction incorrectly advised the jury that it could consider Frankenberg's prior unrelated convictions "on the issue of [his] intent" to commit the charged crime. This instructional error was not preserved due to noncompliance with briefing rules.[7] Nevertheless, this court found that the trial court plainly

---

**6.** All rule references are to Supreme Court Rules (1999).

Rule 30.20 provides the standard for plain error review: "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that

manifest injustice or miscarriage of justice has resulted therefrom."

**7.** Specifically, the questioned instruction was not set out in the argument portion of Frankenberg's brief. 876 S.W.2d at 288.

erred in giving MAI–CR3d 310.12 rather than MAI–CR3d 310.10.

"By not instructing the jury that the only purpose for which evidence of defendant's prior crimes could be considered was to assess his believability and the weight to be given to his testimony and by stating the testimony could be considered for other purposes, albeit relative to issues not before the jury to decide, the trial court's instruction was confusing, ambiguous and equivocal. Instruction No. 7 was misleading in that it did not provide meaningful guidance to the jury as to what purpose the evidence of defendant's commission of prior crimes could or could not be considered."

876 S.W.2d at 289.

Defendant points out that the offense charged in *Frankenberg*—i.e., statutory rape—was an offense that did not require proof of intent. In contrast, intent was a necessary element of the State's case against Defendant. Consequently, Defendant maintains that "the erroneous instruction here was even more prejudicial because it went to an element of the State's burden of proof." For these reasons, Defendant insists that *Frankenberg* mandates reversal of his conviction. We disagree.

■ Whether plain error relief is warranted must be decided on a case-by-case basis, *State v. Cline*, 808 S.W.2d 822, 824[5] (Mo.banc 1991), and must be " 're-balanced each time against the particular facts and circumstances of each case.' " *Frankenberg*, 876 S.W.2d at 288 (quoting *State v. Miller*, 604 S.W.2d 702, 706 (Mo. App.1980)). Here, there was extensive evidence of Defendant's involvement in related crimes, specifically the offenses against Lingbeck. Consequently, there was evidentiary support for giving an instruction patterned after MAI–CR3d 310.12. In-

struction No. 9 was not, therefore, totally devoid of meaningful guidance to the jury. In contrast, the *Frankenberg* instruction was wholly deficient in that respect. 876 S.W.2d at 289.

■ Ordinarily, relief under the plain error standard is unavailable where the incriminating evidence is strong, the sufficiency of such evidence is undisputed, and the accused has confessed to the crime. *State v. Rennert*, 514 S.W.2d 579, 580[3] (Mo.1974). That is the situation here. Defendant repeatedly told police officers that he killed Demster. He made a similar confession to his mother. She testified that when Defendant came back to their apartment at approximately 4:00 a.m., he told her he had just killed two people. The record is replete with physical evidence that linked Defendant to the murder of Demster. Moreover, Lingbeck's testimony tended to corroborate Defendant's admissions and added to the considerable other circumstantial evidence that pointed to Defendant's guilt. In opening statements, Defendant's lawyer told the jury, "[m]y client took the life of Mr. Demster. We're not here today to determine whether he did or did not take that life." Defendant devoted virtually all of his evidence to supporting his affirmative defense of mental disease or defect excluding responsibility. The State offered expert evidence to rebut Defendant's affirmative defense. In contrast, in *Frankenberg* the evidence was "one on one," that is, the victim testified she was sodomized and the defendant denied the acts. Also, the defendant in *Frankenberg* raised no affirmative defenses. He simply denied the conduct attributed to him by the victim.

Here, the State presented overwhelming evidence which, if believed by the jury, established Defendant's guilt beyond a reasonable doubt. For the most part, Defendant never challenged the State's proof

of the elements of the crime, including his culpable mental state. In particular, the expert witnesses who gave their opinions about Defendant's mental condition never testified he lacked the requisite culpable mental state when he killed Demster. Instead, Defendant's evidence regarding mental disease or defect focused on his affirmative defense, i.e., that when he killed Demster he did not know or appreciate the nature, quality, or wrongfulness of his criminal conduct or was incapable of conforming his conduct to the requirements of the law.

The different potential usage for mental disease or defect evidence is explained in MAI–CR3d 308.03, Notes on Use 3:

"3. The use of evidence of mental disease or defect negating the existence of a required culpable mental state is not the same as the affirmative defense of lack of responsibility by reason of mental disease or defect. (See MAI–CR 3d 306.02). *Evidence of mental disease or defect negating a culpable mental state is simply evidence that the defendant did not have the culpable mental state that is an essential element of the crime.* The burden is on the state to prove the existence of the culpable mental state beyond a reasonable doubt." (Emphasis added.)

Had Defendant presented evidence of a mental disease or defect relative to the existence of the required *culpable mental state*, he could have had the jury instructed in that regard. MAI–CR3d 308.03, Notes on Use 2. Defendant presented no such evidence and never requested an instruction patterned after MAI–CR3d 308.03. Instead, Defendant focused his evidence and his jury arguments on his affir-

mative defense of mental disease or defect excluding responsibility. From the opening statement onward, this jury could not help but know that the central and overriding question they had to answer in deciding Defendant's guilt or innocence was whether he lacked responsibility for his criminal conduct because, due to a mental disease or defect existing at the time of his actions, he did not know or appreciate the nature, quality, or wrongfulness of his conduct or was incapable of conforming his conduct to the requirements of law. To the extent that Instruction No. 9 told the jury it could consider his prior convictions in deciding his believability, the instruction correctly stated the law. To the extent that the instruction told the jury it could consider prior convictions on the issue of motive or intent of Defendant, it was a misdirection on issues that were largely uncontested and uncontroverted.

When we consider all the instructions and circumstances together, we do not see the same high potential in this case that the jury was so misdirected as to cause a miscarriage of justice as we did in *Frankenberg*, especially in light of the lengthy record in which substantially all of the evidence focused on Defendant's single defense. *See Howard*, 896 S.W.2d at 484[20]. This is not a case "possessing a strong, clear showing of manifest injustice," *see State v. Barnes*, 714 S.W.2d 811, 815 (Mo. App.1986), and, unlike *Frankenberg*, the instructional error did not affect Defendant's right to a fair trial.

■ Briefly, we consider a contention by Defendant made in the argument portion of his brief that is not encompassed in his Point I relied on (or any other point).[8] Defendant relies on *Harmon v. Marshall*,

8. We review Defendant's claims in this regard despite our usual practice of reviewing only issues raised in an appellant's points relied on. *State v. Crenshaw*, 852 S.W.2d 181,

185[4] n. 4 (Mo.App.1993). Claims found solely in the argument part of a brief are generally ineligible for review. *Id.*

57 F.3d 763 (9th Cir.1995), to argue that "[f]ailure to instruct the jury on all elements of an offense is constitutional error which is plain and cannot be harmless; it precludes the jury from finding each fact necessary to convict the defendant." Continuing, Defendant notes that the *Harmon* court rejected any notion that overwhelming evidence of a defendant's guilt renders such instructional error harmless when it stated, "[We] cannot judge the defendant guilty; that role is reserved for the jury." *Id.* at 765. With the foregoing as his premise, Defendant argues:

> "Just as failing to instruct on an element is prejudicial error, so too is erroneously instructing the jury that it may consider irrelevant and improper evidence as proof of the necessary elements. To permit the trial court to erroneously instruct the jury that it could consider facts irrelevant and improper for that purpose cannot be considered harmless under any circumstances. Indeed, this error is tantamount to a structural defect of the nature described in *Arizona v. Fulminante*, 499 U.S. 279, 309–310, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991), and is not subject to a harmless error review."

We disagree. Defendant cites no on-point authority to support his argument, and we find none. Moreover, the following, taken from the case Defendant cites, *Arizona v. Fulminante*, shows the fallacy of his argument.

> "Since this Court's landmark decision in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), in which we adopted the general rule that a constitutional error does not automati-

cally require reversal of a conviction, the Court has applied harmless-error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless. *See e.g. Clemons v. Mississippi*, 494 U.S. 738, 752–754, 110 S.Ct. 1441, 1450–1451, 108 L.Ed.2d 725 (1990) (unconstitutionally overbroad jury instructions at the sentencing stage of capital case) ...; *Carella v. California*, 491 U.S. 263, 266, 109 S.Ct. 2419, 2421, 105 L.Ed.2d 218 (1989) (jury instruction containing an erroneously conclusive presumption); *Pope v. Illinois*, 481 U.S. 497, 501–504, 107 S.Ct. 1918, 1921–1923, 95 L.Ed.2d 439 (1987) (jury instruction misstating an element of the offense); *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (jury instruction containing an erroneous rebuttable presumption)...."

499 U.S. at 307, 111 S.Ct. at 1263.

Even if the instructional error here is constitutional error—a question we need not and do not decide—it is not an error that automatically requires reversal. We reject Defendant's argument to the contrary. This was an error reviewable at our discretion under the plain error standard.

▐ Having analyzed Defendant's first point for plain error as he requested, we find none. Defendant has failed to show a manifest prejudice to him that affected his substantial rights in connection with Instruction No. 9 or any failure to follow the applicable Notes on Use for MAI–CR3d 310.10 and 310.12. Point I is denied.[9]

---

9. Defendant also argues for reversal in his first point on the theory that his trial counsel was constitutionally ineffective "[in failing] to properly object to the erroneous instruction and fail[ing] to offer correct instructions." We cannot review that issue in this direct appeal. Rule 29.15 provides the exclusive procedure for obtaining relief based on a claim of ineffective assistance of trial counsel. *State v. Wheat*, 775 S.W.2d 155, 157 (Mo.banc 1989). "[C]laims for relief cognizable under [Rule 29.15] may not be considered when

*Point II: Plain Error: Instruction MAI–CR3d 310.50*

In his second point, Defendant contends that the trial court erred in submitting Instruction No. 10 to the jury because the instruction effectively relieved the State of proving Defendant's state of mind and thereby violated his right to due process. Instruction No. 10, as submitted to the jury in this case, provided:

"You are instructed that an intoxicated or a drugged condition whether from alcohol or drugs will not relieve a person of responsibility for his conduct."

This instruction was patterned after MAI–CR3d 310.50. In *State v. Erwin,* 848 S.W.2d 476[10] (Mo.banc 1993), the Missouri Supreme Court held that MAI–CR3d 310.50 "creates a reasonable likelihood that the jury would believe that if defendant was intoxicated, he was criminally responsible regardless of his state of mind. That reading has the effect of excusing the state from proving the defendant's mental state beyond a reasonable doubt and violates due process. . . ." *Id.* at 483.

Defendant now relies on *Erwin* for his argument that the trial court's submission of Instruction No. 10 deprived Defendant of his right to due process and constituted plain error. We disagree.

The *Erwin* court expressly limited its holding as follows:

"MAI–CR3d 310.50 should not have been given [in this case] and is not to be given in any case in the future. This ruling shall be applicable only in cases tried in the future and *cases now subject to direct appeal where the issue is pre-*

*served that MAI–CR3d 310.50 violated due process because it relieved the state of its burden of proof as to the requisite mental state.*"

*Id.* at 484[15] (emphasis added). The State tried its case against Defendant in December 1990, over two years before the *Erwin* holding. Thus, MAI–CR3d 310.50 had not yet been proscribed by the supreme court at the time of Defendant's trial. Defendant's case was, however, on direct appeal at the time the *Erwin* holding was handed down. Nevertheless, Defendant did not object to the submission of Instruction No. 10 to the jury. Under the express terms of *Erwin,* Defendant is not entitled to a new trial simply because the trial court submitted Instruction No. 10 to the jury. *Erwin* would only avail Defendant if he had properly objected to the instruction at trial. We are confirmed in our view by *State v. Parker,* 886 S.W.2d 908, 923[46] (Mo.banc 1994); *State v. Wise,* 879 S.W.2d 494, 519[68] (Mo.banc 1994); *State v. Viviano,* 882 S.W.2d 748, 753–754[8] n. 10 (Mo.App.1994); and *State v. Day,* 866 S.W.2d 491, 493–494[1] (Mo.App. 1993).

Because Defendant failed to object to Instruction No. 10, his point is limited to plain error review under Rule 30.20. We find no manifest injustice or miscarriage of justice resulted from the submission of Instruction No. 10 in this case. Moreover, we note that "[c]onstitutional issues must be raised at the earliest opportunity, otherwise they are waived." *State v. Wilder,* 946 S.W.2d 760, 761[2]

presented for the first time on appeal." *Id.* at 157–58[1]. We are bound by decisions of the Missouri Supreme Court. Mo. CONST. art. V, § 2; *Reynolds v. State,* 939 S.W.2d 451, 454 (Mo.App.1996). Defendant has already filed a Rule 29.15 motion. *See Vivone,* 857 S.W.2d at 489. Defendant's post-conviction case was

the exclusive forum to present *all* claims of ineffective trial counsel. Defendant's failure to include his present complaint about trial counsel in his Rule 29.15 case constituted a complete waiver of the claim. *See* Rule 29.15(b).

(Mo.App.1997). For all these reasons, Point II is denied.

*Point III: Expert Witness Opinion on Credibility of Defendant*

■ Defendant's third point maintains that the trial court plainly erred in allowing the State's psychiatrist to testify about "inconsistencies" and "discrepancies" between Defendant's account of events on the night of the murder and the physical evidence at the scene of the murder. Defendant argues that this testimony was beyond the witness's area of expertise, was an impermissible comment on Defendant's credibility, and that admission of the testimony violated his right to remain silent and right to counsel.

At trial, the State presented the testimony of Dr. William Logan, a psychiatrist. Dr. Logan testified that he had been ordered by the court to examine Defendant for the purpose of determining whether Defendant "had a mental disease or defect that at the time this particular event occurred, the stabbing of Mr. Lingbeck and killing of Mr. Demster, that prevented him from either knowing the nature and quality of his actions, the wrongfulness of his actions, or caused an inability to control his behavior within the requirements of the law." Dr. Logan explained to the jury the process he employed in formulating his opinion on this matter. First, he reviewed police reports of the investigation, including statements given to police by Defendant, his mother, and his sister. Next, he interviewed Defendant. During the interview, Dr. Logan inquired about Defendant's mental history, made behavioral observations, and, finally, discussed "details of what occurred during the time [Defendant] was in Mr. Demster's apartment." Dr. Logan testified that following his interview with Defendant, he (Dr. Logan) asked to see blood-stain analyses, an au-topsy report on Mr. Demster, and other physical evidence, to determine "whether [Defendant] was telling [him] the truth." He asserted that the crime-scene evidence was the only means by which he could determine the veracity of Defendant's account of events the night of the murder because "[t]he only other witness that had any direct knowledge of what might have occurred in that apartment was Mr. Lingbeck, and he was at points too obtunded, too out of it, to really say how the whole incident started."

The State's attorney then presented Dr. Logan with photos of the crime scene and other physical evidence and asked Dr. Logan to describe any "inconsistencies" between Defendant's story and the physical evidence. Dr. Logan began by recounting Defendant's version of events as told to him by Defendant during their interview. Dr. Logan then explained various ways in which the physical evidence appeared to contradict Defendant's story. Dr. Logan also commented on certain physical evidence that suggested Defendant had not disclosed to him everything that had occurred the night of the murder.

■ Defendant's attorney did not object to Dr. Logan's testimony of these discrepancies as beyond the scope of his expertise. Nor did Defendant's attorney object to Dr. Logan's testimony as an impermissible comment on the credibility of Defendant, who later testified at trial. Having failed to contemporaneously object to such evidence and having failed to assign its admission as trial court error in his motion for new trial, Defendant has not preserved this issue for review on appeal. *See State v. Kelley,* 953 S.W.2d 73, 88 (Mo.App.1997), *cert. denied,* 522 U.S. 1151, 118 S.Ct. 1173, 140 L.Ed.2d 182 (1998). Nevertheless, Defendant urges us to reverse his conviction on the theory that a manifest injustice or miscarriage of justice

resulted when the trial judge did not *sua sponte* preclude the prosecutor from eliciting such testimony from Dr. Logan. We decline Defendant's request.

 It is true that expert opinion testimony which directly comments on a particular witness's credibility ordinarily is not admissible. *State v. Williams*, 858 S.W.2d 796, 800 (Mo.App.1993). However, it is also fundamentally true that a trial judge's function in a criminal case is not to help lawyers try their lawsuits. *Kelley*, 953 S.W.2d at 89[37]. "They [trial judges] preside to judge a lawsuit." *State v. Drewel*, 835 S.W.2d 494, 498 (Mo.App. 1992). Accordingly, trial judges should act *sua sponte* only in exceptional circumstances. *Kelley*, 953 S.W.2d at 89[37]. "Without objection or other request for relief, a trial judge's options are narrowed to uninvited interference in the law suit, thus subjecting the trial court to the accusation of 'trying my lawsuit.'" *Id.* at 89 (citations omitted).

The potential for harm to an orderly system of justice heightens when a trial judge leaves his or her assigned role and decides *sua sponte* what evidence a jury should be permitted to consider.

"[T]rial strategy can account for not objecting to some items of evidence at the trial. In any event, the judge presiding at the trial must at least be informed of a party's objection to evidence at trial before an alleged error stemming from the admission of the same can be considered on appeal. To hold otherwise would be to allow a party to sit idly by while evidence was admitted, take his chances with a jury, and then if he loses to bring up a matter for the first time on appeal that had never been presented to the trial judge. This is not conducive to an orderly system of justice and is not acceptable."

*State v. Bryson*, 506 S.W.2d 358, 361 (Mo. 1974). *See State v. Finster*, 985 S.W.2d 881, 888 (Mo.App.1999).

Here, Defendant and his trial lawyer made a conscious trial-strategy decision *not to object* to the inadmissible portions of Dr. Logan's testimony. As reported in *Vivone:*

"Trial counsel testified at the hearing on defendant's 29.15 motion that his failure to object to Dr. Logan's testimony was intentional and consistent with his trial strategy. He believed the best defense strategy was to just let Dr. Logan talk because his demeanor and testimony were blatantly one-sided, which counsel thought was having a negative impact on the jury. Trial counsel summarized his approach to Dr. Logan's testimony by saying: '[I]t became obvious to [Defendant], it became obvious to me, and I say that because we discussed it, that he was destroying his own credibility with the jury because of the aggressive nature he was attempting to deal with Tom as the defendant, and I made a conscious decision based on my trial strategy to allow him to continue to testify to things that may have been objectionable, simply because I thought he was destroying his own testimony....'"

857 S.W.2d at 493.

Defendant cannot have it both ways; that is, he cannot consciously fail to object to evidence he knew was inadmissible and, thus, implicitly join in its presentation to the jury in the hope it will help him and then argue on appeal that admission of such evidence resulted in manifest injustice or a miscarriage of justice. *Finster*, 985 S.W.2d at 888. Clearly, no manifest injustice or miscarriage of justice resulted from Dr. Logan's testimony.

We hasten to add that our decision is not based solely on the unique circum-

stances of this case, i.e., the summary of trial counsel's testimony found in the post-conviction appeal. *Vivone,* 857 S.W.2d at 493. On the contrary, *State v. Hamilton,* 892 S.W.2d 774 (Mo.App.1995), leads to the same result.

In *Hamilton,* the State presented the expert testimony of an obstetrician/gynecologist. During the expert's testimony, the prosecutor asked the witness if he believed an alleged rape and sodomy victim's story, which she had disclosed to him during a physical examination performed by the doctor. Initially, defense counsel objected to the question, arguing that the prosecutor was calling for the expert to give an opinion he was not qualified to give. After the prosecutor offered a short argument against the objection, defense counsel withdrew the objection before the trial judge uttered a word. The doctor answered the prosecutor's question by stating, "As far as I could tell, the girl was telling the truth." *Id.* at 777. Later in the expert's testimony, the prosecutor again asked the doctor whether he believed a different alleged rape and sodomy victim's account of events. The doctor answered, "In my opinion, yes." *Id.* at 778. This time, defense counsel did not object to either the question or the answer.

On appeal, the defendant claimed that the trial court plainly erred in allowing the expert witness to state his opinion of the credibility of the two victims' stories. In denying plain error relief, this court stated:

"We find no case, and Appellant cites none, where an appellate court convicted a trial court of plain error in failing to exclude evidence after an accused withdrew his objection to it. Reversal for plain error in such circumstances would enable an accused to create a dilemma for a trial court, rendering the court vulnerable to reversal regardless of which way it ruled.

"If the trial court received the evidence, the accused could, as Appellant has done here, claim receipt of the evidence was plain error, requiring reversal. If the trial court excluded the evidence, the accused could contend on appeal that the trial court improperly interfered by barring evidence which the accused consciously chose to allow the jury to hear, thereby requiring reversal. To state the scenario is to expose its potential for mischief."

*Id.* at 781. Although this case does not present us with the problem of defense counsel entering an objection only to withdraw it before the trial court can rule on it, we believe the trial court was presented with the same dilemma here as that described in *Hamilton.* Therefore, *Hamilton* confirms our belief that no manifest injustice or miscarriage of justice resulted from the reception of Dr. Logan's testimony in this case. Having found no "exceptional circumstances warranting plain error relief," we deny Defendant's third point.[10]

---

**10.** Defendant's complaint that Dr. Logan's revelation of Defendant's statements deprived him of his right to counsel is meritless. Defendant neither objected on this basis at trial nor raised the issue in his motion for new trial. Constitutional issues must raised at the earliest opportunity or they are waived. *Wilder,* 946 S.W.2d at 761[2].

Defendant's complaint that Dr. Logan's testimony deprived him of his right to remain silent is also meritless for two reasons. First,

as stated above, constitutional issues must be raised at the earliest opportunity or they are waived. *Id.* Again, Defendant neither objected to Dr. Logan's testimony on this basis at trial nor raised the issue in his motion for new trial. Consequently, he waived this challenge. Second, Missouri law expressly allows the admission of statements made by a defendant to a mental health examiner on the issue of the defendant's mental condition. § 552.030.5. Where such statements are ad-

*Point IV: Request for Plain Error Review of Closing Argument*

■ During his initial closing remarks, the prosecutor told the jury:

> "Let me tell you what's important, is that at approximately 12:40 on the same day this defendant asked for Scotty Penner [policeman] to come back and said 'I need to talk to someone about this. *I want to let you know what happened.*'"

Later, in his final argument to the jury, the prosecutor said:

> "Ladies and gentlemen, just very quickly, why all the time—well he tries to clean up. He admitted that.... He spends that time trying to do it, and finally decides there's no way. '*I can't clean it up. I've killed these two people. It's there. People know I was over here.*'"

Defendant argues that the trial court "plainly erred" in allowing the prosecutor to make the italicized remarks to the jury. He asserts there was no evidence that he made those statements and, thus, the State was arguing matters not in evidence. Defendant characterizes the questioned argument as bearing directly upon the critical issues of deliberation and premeditation and insists that allowing the remarks led to "manifest injustice" and deprived him of a fair trial.

By requesting plain error review, Defendant concedes what the record shows; namely, that he did not contemporaneously object to the prosecutor's alleged improper argument, and he did not raise the issue in his motion for new trial. Consequently, Defendant's fourth point can be examined only under the plain error standard of Rule 30.20.

■ Appellate courts of this state "'rarely grant relief on assertions of plain error as to closing argument ... because, in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention.'" *State v. Bogard,* 836 S.W.2d 87, 89 (Mo.App.1992) (quoting *State v. Clemmons,* 753 S.W.2d 901, 907–08 (Mo.banc 1988)).

■ Trial strategy looms as an important consideration in any trial; accordingly, assertions of plain error concerning matters contained in closing argument are generally denied without explication. *State v. Wood,* 719 S.W.2d 756. 759[5] (Mo.banc 1986); *State v. Smith,* 979 S.W.2d 215, 219[5] (Mo.App.1998). In *State v. McMillin,* 783 S.W.2d 82 (Mo.banc 1990), our supreme court refused to review the defendant's claims with respect to closing argument under the plain error standard, saying, "'The plain error rule should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review.'" 783 S.W.2d at 98[31] (quoting *State v. Valentine,* 646 S.W.2d 729, 731 (Mo.1983)). This court has, likewise, refused plain error review of unpreserved claims of trial court error concerning closing argument. *See, e.g., Smith,* 979 S.W.2d at 219[5]; *Bogard,* 836 S.W.2d at 89; *State v. Jordan,* 834 S.W.2d 900, 901 (Mo.App.1992).

Adhering to the foregoing, this court expressly refuses to review Defendant's

---

mitted on the issue of defendant's mental condition, a trial court must give MAI–CR3d 306.04 to inform jurors that any such statements of the defendant to the mental health examiner are not to be considered on the issue of the defendant's guilt or innocence.

The trial court properly tendered this instruction to the jury in this case. Thus, we find that no manifest injustice or miscarriage of justice resulted from the unchallenged admission of Dr. Logan's testimony.

claims with respect to closing argument. Defendant waived his claim of error by failing to preserve the alleged error. *Id.* at 901[1]. Perhaps Defendant "considered the remarks inconsequential not warranting objection[,] or as trial strategy [counsel] set the stage for built in error." *See Wood*, 719 S.W.2d at 760. Whatever the reason for Defendant's failure to object, we decline to exercise our discretion to review Defendant's fourth point for plain error.

The judgment is affirmed.

CROW, P.J., and PARRISH, J., concur.